No. 11,585.

STRONG v. THE PEOPLE.

Decided November 22, 1926.

Plaintiff in error was convicted of an assault with a deadly weapon.

*Affirmed.*

*On Application for Supersedeas.*

1. CRIMINAL LAW—*Evidence—Admissibility.* In a prosecution for assault with a deadly weapon committed on prosecuting witness while a trespasser engaged in a hallowe'en prank, evidence concerning the intention of the trespasser and value of the property involved, held, under the facts disclosed, to have been properly admitted.

2. *Agreement—Absent Defendant.* In a prosecution for assault with a deadly weapon, agreement in chambers between court and counsel as to the nature of the defense, held binding on defendant although made in his absence.

3. INSTRUCTIONS—*Requests.* Requested instructions which are covered by instructions given by the court, are properly refused.

4. NEW TRIAL—*Motion Overruled.* Motion for new trial on the ground of newly discovered evidence, held properly overruled.

*Error to the District Court of Mesa County, Hon. Straud
M. Logan, Judge.*

Messrs. VINCENT, VINCENT & BOWIE, for plaintiff in
error.

Mr. WM. L. BOATRIGHT, Attorney General, Mr. LOUIS
W. BURFORD, Assistant, for the people.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFF in error, defendant in the trial court, and so
referred to here, was convicted of an assault with a dead-
ly weapon, a shotgun, with intent to commit on the person
of one Harold Thomas a bodily injury as charged in the
second count of the information.

Defendant was sentenced to pay a fine of $1,000 and to
be imprisoned in the county jail for a period not exceed-
ing six months. From this judgment and sentence he
prosecutes this writ of error, and asks that the same be
made a supersedeas.

The defendant admitted that he fired the shot which in-
jured the prosecuting witness, Thomas, and the evidence
tended to establish that the shooting occurred in the fol-
lowing circumstances: About midnight on the night of
October 31, 1925, Hallowe'en night, Thomas, who was
about seventeen years of age, and four other boys of
about the same age, riding in a truck automobile without
a top, along the highway, stopped at the ranch house of
the defendant, two of the boys sitting on the front seat,
and three, including Thomas, sitting in the box or truck
part of the car. When they reached defendant's place,
Thomas and Canfield went into defendant's yard where
there was an automobile truck with a top, and the run-
ning gears of a buggy or light spring wagon; they took

the running gears, of the wagon, pulled them out into the road, climbed back into their truck, took seats in the back part, their faces to the rear, holding on to the shafts of the buggy; they had just started their car when the shot was fired which struck Thomas in the face, and slightly wounded three of the other boys. One of the shots with which the gun was loaded struck Thomas in the eye, resulting in its loss. There was evidence introduced tending to show that the boys were indulging in Hallowe'en pranks; that they were intending to pull the buggy down the road some distance and leave it there; that the value of the buggy taken by the boys was from $5 to $25; the latter value placed thereon by the defendant.

Evidence was introduced on the part of defendant tending to show that he had been absent that evening and returned home about midnight in his Ford coupe, which he put in the garage, and that he then went into the house; that just about as he was ready to retire he heard a noise sounding like a car starting; that he looked out of the window and saw two persons in the yard; that he called to them; that they stopped for a moment and then started toward a car owned by defendant, standing in the yard, a Ford roadster with a body; that defendant left the window, picked up a Winchester shotgun and went out into the yard; that he thought they were taking his car; that he saw a dark object moving down the road and knew it was a car; thought it was his car they had taken; that it was running without lights, and he fired at them; that after he shot he looked around and discovered that they had not taken his car. It appears that his car was standing about forty feet from where he stood when he fired the shot, and that it was a moonlight night. It further appears that defendant at that time had no knowledge of the identity of the persons he saw in his yard, nor why they were there, nor what their intentions were.

Defendant assigns the following errors:

(1)   That the court erred in overruling plaintiff in error's objection to the following question asked by the people of the witness Harold Thomas: "Q. Now, Mr. Thomas, what did you intend to do with this—what was your purpose in taking the buggy upon the night of October 31st last?   A. We were just playing Hallowe'en pranks."

(2)   The court erred in overruling plaintiff in error's motion to strike from the record the following question asked by the people of the witness Lawrence Canfield, and the witness' answer thereto, to-wit: "Q. Mr. Canfield, what were you doing with the wagon or the wheels, or whatever it was?   A. We were just going to pull it down the road a little ways and leave it."

(3)   The court erred in refusing to give instruction L asked by defendant, and which is set out in full in the assignments of error.

(4)   That the court erred in not granting defendant a new trial on the ground of newly discovered evidence.

Whether it was error to have admitted this evidence depends on the character of the defense interposed by the defendant and his position relative thereto.   If defendant, as he contends, relied solely upon the defense that in firing the shot which injured the prosecuting witness he acted honestly, and in good faith, and upon a reasonable belief that his automobile was being stolen, and thereby a felony was being committed, whether or not it was in fact, then unquestionably the evidence objected to was wholly immaterial, and its admission would constitute reversible error.   This proposition is so evident as to need no discussion, and in fact is conceded by the Attorney General.

If, however, the defendant not only relied upon that defense, but also upon the further defense that the complaining witness and his associates were in fact committing a felony when the shot was fired, and the shooting occurred to prevent it, then a different question would

arise, and whether the defendant relied upon the two de-
fenses and whether, therefore, the evidence in question
was admissible must be determined from all the facts and
circumstances occurring during the trial.

The court took the view that defendant relied upon both
propositions as a defense, and for that reason the evi-
dence was admitted. During the examination of Harold
Thomas, the first witness called, this question was asked
by the people: "Q. What was your purpose in taking the
buggy?" The question was objected to, and the objec-
tion sustained. During the examination of the witness
Cutter, called on behalf of the people, the witness was
asked concerning the buggy which had been taken by
Thomas and his associates, and asked if it had any value,
to which he answered, "Very little." The defendant
moved to strike the question and answer from the record
as immaterial. Following this objection the court said:
"I think that Harold Thomas was asked the question,
'What was your purpose in taking the buggy?' That was
objected to by defendant's counsel and I sustained it. At
that time I thought that their purpose was not material.
We always have a right to change our opinion. Since no
man may commit a felony, and since any man has a right
to defend himself against a felony, I am convinced that
the people should show, among other things, that the
prosecuting witness, and these other boys associated with
him, were not committing a felony. That would involve,
of course, questions which will later arise, but I will per-
mit the people to go into the question of the purpose of
the boys in this case. It is true that this would involve
the value of the wagon. The last question that was ob-
jected to was as follows: 'Did you say it had no value?'
I will sustain that objection because it is not the proper
way of proving value. You may, by proper questions,
and in proper manner, do so." To this no objection was
made by defendant. Cutter was then asked what was the
value of that wagon or buggy, when defendant requested
permission to examine the witness on his qualifications

before that question should be answered.  He was permitted to do so, and did proceed to examine the witness relative to his qualifications.  Later when Cutter was recalled, and again asked the question as to the value of the buggy, no objection was made thereto, and he answered that its value was $5.

At the conclusion of the people's evidence, defendant moved for a directed verdict, which was overruled, the court stating, among other things, "Now, here is where intent may come in.  There is no doubt but what the boys were committing a trespass.  One may not shoot another for a trespass, or any offense less than a felony—that is, to prevent the commission of a felony.  Now, even in that case the shooting is not justified for the protection of the property particularly, but to prevent the commission of a felony.  The people have shown here, or have tried to show—it is for the jury to determine under proper instructions whether or not the boys were committing a simple trespass or whether they were committing a felony.  Defendant, while being examined as a witness in his own behalf, was asked by his counsel this question referring to the buggy or wagon which the prosecuting witness and his associates had taken on Hallowe'en night, "What is it reasonably worth?  A. $25."

Upon an offer of defendant to introduce certain testimony the court said, "I want to state right here that I believe it was incumbent upon the people to show that these boys were not committing a felony, and for that reason I permitted them to prove the value.  Intent will enter into the question also, and this evidence that they were there on Hallowe'en night to play a prank was for no other purpose than to enable the state to show the intent for which the boys were in there."  The court further stated in answer to defendant's counsel concerning instructions, "Yes, sir, it is not to excuse them at all, but I thought it incumbent upon the people to show that they were not committing a felony; I do not think they would

have any case at all if they had not shown it.'' Following this, further evidence was introduced as to the value of the buggy. Upon overruling the motion for new trial the court said inter alia: ''The questions raised by the motion for new trial first arose when the district attorney asked Harold Thomas the following question, 'What was your purpose in taking the buggy?' That was objected. to by the defendant's counsel and sustained. Later there was a recurrence to this same matter by the district attorney, and an objection again made by defendant's counsel. At that time I said that I would hear counsel on this question; we took a recess, retired to my chambers, and there the matter was discussed. After it was discussed I asked this question of counsel for defendant, 'Is it your position that if the people fail to show that the complaining witness and his associates were not committing a felony upon the premises of the defendant on the night in question, that such failure would entitle defendant to a directed verdict?' And the answer of defendant's counsel was, 'Exactly so.' I then asked the district attorney if he assumed that the obligation was upon the people to establish the same fact, and he said 'Yes,' and that was the purpose of asking his question. I then said that that being the case I would have to go into the purpose of the complaining witness and his associates on the night in question on the premises of the defendant to determine whether or not the boys were committing a felony. I listened carefully to the statement of counsel for the defendant, and I watched throughout the trial the nature of the testimony, and I became convinced that the nature of the defense was of a double character, first, that if the boys, the complaining witness and his associates, were committing a felony, and were shot while so violating the law, the case must fail; second, that the defendant thought the boys were taking an automobile, which under the law of this state is a felony, and that he shot believing a felony was being committed, so the defense is double in

character.  After this discussion I then announced to the jury in open court that I would recede from my position and permit the people to show why the complaining witness and his associates were on the premises of the defendant, and the value of the property which they took, to show that they were not committing a felony.  This ruling was not objected to by the defendant.  In making my ruling, and in reversing my position, I agreed with counsel for defendant that such showing was incumbent upon the people.  If that is true, then of course the questions objected to were proper, and the objection is not good.  The people offered evidence to show the value of the wagon taken by the boys.  The defendant met this question and put witnesses on the stand who testified that the value of the property, as I remember the evidence, was as much as $25, the defendant therefore making an issue directly upon this question.  * * *  The intention of the complaining witness and his associates would be material if the value of the property is $20 or more.  The defendant himself offered evidence to make this question material.''  The foregoing sufficiently shows the court's reason for admitting the evidence objected to.  Upon the overruling of the motion for new trial, the defendant's counsel, among other exceptions, made the following statement: ''The defendant especially excepts to the findings in the order, that the defendant is bound by the statement made by counsel to the judge of this court in chambers, that the defendant was entitled to a directed verdict in the absence of the ability of the state to prove a communicated or disclosed intention with which the prosecuting witness Thomas went upon the premises of the defendant, such statement having been made in relation to the state of proof of the people, not a statement made into the record, nor in the presence of the defendant himself, and made during a discussion of the question of evidence in chambers, at a time when the state's proof was incomplete, and the state had not rested.''

Was the defendant bound by the agreement or understanding arrived at in chambers between the judge and his attorney? The defendant contends that he is not, for the reason that the matters occurred in chambers in the absence of the defendant, and at a time when but little testimony had been introduced on behalf of the people. We do not think the position of defendant in this respect can be sustained. Had the matters which occurred in chambers taken place in the court room, with the court in session, the defendant personally present, and in the presence of the court reporter, the proceedings doubtless would have appeared in the record, and no question of their regularity could scarcely have been raised. We think the defendant and his counsel are as much bound by what occurred in chambers as they would have been had those things taken place in the court room, with the court in session. The statements made by the court are not denied by counsel, and in fact are admitted. Briefly stated, it was agreed that it was incumbent upon the people to establish the fact that the prosecuting witness and his associates were not committing a felony on the night in question, and that unless they made such proof the defendant would be entitled to a directed verdict.

This necessarily called for evidence as to why the boys were there, their intention, and the value of the property taken by them.

In view of the situation thus created, we think there was no error in the admission of the testimony which defendant sought to have excluded.

The instruction requested by defendant, which only had application to the defense that the defendant had a right to act upon his reasonable belief that a felony was being committed, was properly refused. The court, in instructions Nos. 18 and 19, fully covered the matters contained in the instruction refused. Furthermore, the court's instructions fully protected the rights of the defendant and correctly stated the law applicable to the facts in the case.

There was no error in overruling the motion for new trial on the ground of newly discovered evidence. *Eachus v. People,* 77 Colo. 445, 236 Pac. 1009, and cases there cited.

Finding no error in the record, the supersedeas is denied and the judgment affirmed.