[File No. Cr. 219]

THE STATE OF NORTH DAKOTA, Respondent, v. GAB-
RIEL KELLER, Appellant.

THE STATE OF NORTH DAKOTA, Respondent, v. ROBERT
GLASER, Appellant.

(42 NW2d 319)

Opinion filed March 28, 1950

*Sinness & Duffy*, for appellant.

*Wallace E. Warner*, Attorney General and *John J. Tebelius*,
State's Attorney, for respondent.

BURKE, J. Separate informations charging the defendants,
Keller and Glaser, with the crime of rape in the first degree were
filed in the District Court of Wells County. Since the charges
against both defendants concerned a single transaction, the cas-
es were consolidated for trial. Verdicts of guilty were returned
against both defendants and judgment of conviction was entered
against them. Their subsequent motion for a new trial was
denied by the trial court and they have appealed both from the
judgment and from the order denying a new trial. The only
question raised upon the motion for a new trial and upon this
appeal is that the evidence is insufficient to sustain the verdict
of the jury.

At the time of the trial the prosecuting witness was a young
woman, aged 19 years. She had been raised on a farm and had
at times been employed as a waitress in Harvey and Minot.

Upon the night of the occurrence of the events which led to the filing of the charges against these defendants, she had gone with friends to the Harvey Cafe for a midnight lunch. According to her version of the facts she became impatient at a delay in obtaining service and decided to leave for home. On her way out of the cafe she stopped at a booth in which the defendant, Robert Glaser, was sitting with some other young people with whom she was acquainted. One of them asked her to tell Gab Keller, if she saw him outside, to wait for them because they wanted to ride home with him. On leaving the cafe, she went first to the car of the young man, with whom she had come to the cafe, to get her purse. She then met a young man named Knutson who offered to take her home. She accepted his offer and handed him her purse to keep for her while she delivered the message to Keller. Then she went to the place where Keller's car was parked. She said, "I looked in the car and I seen Gab in the back seat so I give him the message and he invited me to sit in the car. I refused. He took hold of my arm and pulled me into the car. . . . He had no more pulled me in than Bob Glaser came. He sat in the car. Gab said to take us for a ride. He did. As we started driving Gab said, 'Take us out of town.' They drove about a mile and a half out of town. Gab looked up and said, 'That is far enough' so Glaser immediately turned the car around and stopped while we were fighting in the back seat. . . . He grabbed hold of my left arm and held on to it until he seen Gab was getting the best of me. . . . I was getting so tired I couldn't hardly do anything when Glaser grabbed hold of my arm, I was so tired then, and him holding my arm, I couldn't do much with one arm. . . . He (Keller) shoved his shoulder under my chin and almost choked me to death. I grabbed hold of his hair and pushed him back, then he shoved his hands in my face and broke my glasses." She stated that despite the fact that she was fighting against him, Keller completed an act of sexual intercourse with her contrary to her will and that she fought until she was so tired she couldn't do any more.

Her testimony is corroborated by the fact that she made immediate complaint to her sister upon arriving at the sister's

home at about three o'clock in the morning and that she sought at once to make complaint to the proper authorities. As to what happened when she arrived at her sister's home, the sister testified:

"Q. Were you awakened when she came in?

A. Yes, she was crying so hard she woke me up crying. I got up and asked her what was the matter. She was all in . . . She said Gab Keller and Bob Glaser had her out and raped her.

Q. Describe her appearance when you saw her.

A. Her hair was all messed up and she had a scratch on her face and her face was kind of bloody and her skirt was twisted and wrinkled; her blouse was twisted and her blouse was unbuttoned . . . I told her to sit down and she said she was going to see George Letham. (A Harvey policeman)

Q. Did you notice black and blue marks on her body?

A. No, not at that time. She had scratches on her leg that she showed me the next day and a bump on her head, on the back of her head.

Q. When did you notice bruises on her?

A. The next morning.

Q. Where were they?

A. Her throat was all swollen up and on the back of her head, somewhere back here—I don't know exactly and she had scratches on her face and her slip was torn—she showed me that too and her glasses were broken."

The witness Knutson corroborated the testimony of the prosecuting witness concerning her arrangements for a ride home. He stated that he asked her if she wanted a ride home, that she accepted the offer of a ride, handed him her purse and said she wanted to go inside and would be right back.

The defendant, Keller, testified that the prosecuting witness entered his car in accordance with an arrangement previously made in the Harvey Cafe. He admitted that an act of sexual intercourse, participated in voluntarily between him and the prosecuting witness took place in the back seat of his car at the time and place alleged in the information. He stated that the

defendant, Glaser, didn't know that he and the prosecuting witness were in the car at the time the act took place. He also testified that an altercation, subsequent to the act of intercourse, took place between him and the prosecuting witness, during the course of which he slapped her, broke her glasses and "pushed her to one side." He stated that the reason for the altercation was that she became angry when he ceased paying attention to her, that she swore at him and charged that his only interest in her was for dishonorable purposes.

The defendant, Glaser, denied that he was aware of what took place in the back seat, but stated he heard "an argument going on back there." He said, "The argument kept getting worse and then Gab said, 'Stop the car!' I stopped the car again and I turned around and asked them what was going on back there. About that time (the prosecuting witness) hauled off and hit me." According to Glaser, this argument took place just before he took the prosecuting witness to the home of her sister.

One of the state's witnesses testified as to a statement made by the defendant, Keller, either a week or two weeks after the happening of the act in question. The statement was grossly obscene and for that reason we shall not set it down in this opinion. It could be interpreted, however, only as an admission of the acts which constitute the crime with which he was charged.

It is clear, from the facts set forth above, that there was substantial evidence upon which the jury could have found a verdict of guilty. Defendants contend, however, that the prosecuting witness was completely discredited and that her testimony was not worthy of belief. It is true, there is evidence in the record which tends to impeach some of her testimony. It is also true, that there is evidence which casts doubt on the credibility of the defendants. The choice was one between the pot and the kettle. Since there was substantial evidence of defendants' guilt, it was for the jury to make that choice. Questions of the weight of evidence and the credibility of witnesses are for the jury. And a verdict rendered upon substantial, though contradicted, evidence will not be disturbed upon appeal. State v. Keyes, 58 ND 700, 227 NW 224; State v. Johnson, 58 ND 832,

227 NW 560; State v. Bossart, 61 ND 708, 240 NW 606; State v. Gebhard, 73 ND 206, 13 NW2d 290.

The judgment of the district court is therefore affirmed.

NUESSLE, C. J., MORRIS and CHRISTIANSON, JJ., and HUTCHINSON, Dist. J., concur.

GRIMSON, J., did not participate.