STATE of North Dakota, Plaintiff and Respondent,

v.

George McCRAY, also known as George McCrey, Defendant and Appellant.

Cr. No. 288.

Supreme Court of North Dakota.

Nov. 17, 1959.

Ella Van Berkom and Joseph P. Stevens, Minot, for appellant.

Leslie R. Burgum, Atty. Gen., and LeRoy A. Loder, State's Atty., Minot, for respondent.

BURKE, Judge.

The defendant-appellant was convicted in the District Court of Ward County of the crime of Unlawful Ownership or Possession or Control of a Pistol after a Conviction of Burglary. The case is here upon appeal from a motion denying a new trial and from the judgment of conviction. Specifications of error relate to the sufficiency of the evidence, and the reception of evidence concerning prior convictions of the defendant for other crimes.

The challenge to the evidence is twofold. In the first place it is said that there is no proof in the record that the prior conviction of burglary, alleged in the information, involved the use of a pistol and that by the provisions of the statute under which the defendant was charged, it is only a conviction of a crime when so armed which will deprive a person of his right to own or possess a pistol. Secondly, it is urged that the evidence is insufficient to permit the jury to find that the defendant did own or possess a pistol. Decision upon the first issue rests solely upon a construction of the pertinent statutes as it is conceded that there is no proof that defendant was armed at the time of the alleged commission of the prior burglary.

Section 62-0104, NDRC 1943, the statute under which defendant was charged reads as follows:

"The following persons shall not own a pistol or have one in their possession or under their control:

"1. A person who has been convicted anywhere of committing or attempting to commit any of the crimes mentioned in section 62-0102;

"2. A person who is under the age of seventeen years or who is a drug addict, or habitual drunkard."

Section 62-0102, NDRC, reads as follows:

"Any person who shall commit or attempt to commit murder, manslaughter, except manslaughter arising out of the operation of an automobile, kidnaping, mayhem, assault to do great bodily harm, or any other ag-

gravated assault, robbery, burglary, extortion, larceny, making or possessing burglar's instruments, buying or receiving stolen property, aiding escape from prison, or unlawfully possessing or distributing habit-forming narcotic drugs, when armed with a pistol, may be punished by imprisonment for not more than ten years in addition to the punishment provided for the crime."

■ Defendant says the crimes mentioned in the above section are the enumerated crimes committed when armed with a pistol. The State contends that this statute lists certain crimes and provides an additional penalty if the listed crimes are committed when armed with a pistol and that the reference contained in Section 62–0104, supra, is to this list of crimes which may be aggravated by the use of a pistol and not to such crimes when so aggravated. A careful reading of Section 62–0102 supports the construction asked by the State. The penalty clause of this section provides that violators "may be punished by imprisonment for not more than ten years in addition to the punishment *provided for the crime.*" (Emphasis supplied.) The word crime as used in the penalty clause unquestionably refers to the crimes previously mentioned in the statute and it refers to them unaggravated by the use of a pistol because the statute directs separate punishments for the crime and for the aggravation. The reference in Section 62–0104 to the crimes mentioned in Section 62–0102 should be construed to have the same meaning and effect as the reference to crime in the penalty clause of Section 62–0102 has to the crimes previously mentioned therein. That is to say: that the crimes referred to in Section 62–0104 are those which may be aggravated by the use of a pistol. The evidence in the case established that defendant had been previously convicted of the crime of burglary. This was one of the crimes mentioned in Section 62–0102.

The evidence was therefore sufficient upon this aspect of the proof.

■ The State also proved that defendant purchased a pistol; that at the time of purchase, he signed a purchaser's statement and that the pistol was delivered into his possession. The defendant lived in a rented room in a house occupied by a Mrs. Govan and her children. He was in this room when he was arrested and Mrs. Govan was present at the time. When defendant was informed of the charge against him he said that he didn't know that it was illegal for him to own a pistol and asked if he couldn't take it back to the store and get his money back. When told that the police wanted the pistol, he said he would look for it. After looking through some drawers in his room, he took the police to the place where he worked, where he looked behind the counters and into some cupboards. Finally he took the police back to the house where he roomed and told Mrs. Govan that it would be all right to give the police the pistol. Mrs. Govan then brought the pistol out of the house and gave it to the police. From the time of the arrest until the delivery of the pistol, defendant did not deny that the pistol was his. He told the police that he would get it for them and he told Mrs. Govan to deliver it to them. Mrs. Govan who was present at the time of the arrest did not claim that the pistol was hers.

At the trial defendant testified that he bought the pistol for Mrs. Govan, with her money, and that the only time that it was in his possession was when he carried it in his hand from the counter in the store to Mrs. Govan, who was waiting in her car parked in front of the store. In this testimony he was corroborated by Mrs. Govan.

■ The State proved the sale and delivery of the pistol to the defendant. His behavior when arrested was consistent with ownership by him and inconsistent with

ownership by any other person. The weight of the testimony and credibility of witnesses were matters for the determination of the jury. State v. Holte, N.D., 87 N.W.2d 47; State v. Keller, 77 N.D. 165, 42 N.W.2d 319; State v. Gulke, 76 N.D. 653, 38 N.W.2d 722. The jury evidently disbelieved the testimony of the defendant and Mrs. Govan. It was their prerogative to do so if they felt the facts warranted such action. The evidence is sufficient to sustain the verdict.

There remains for consideration defendant's specification that it was prejudicial error for the court to allow the defendant to be cross-examined concerning his convictions of other crimes. In this respect the record shows the following:

(By Mr. Mahoney) "Mr. McCray, in May of 1934, in Portland, Oregon, were you convicted of a violation of the Mann Act or White Slavery Act? A. No.

"Mr. Stevens: Just a minute. We object to any questions asked of Mr. McCray as to other convictions other than the one of burglary in 1921 which he has admitted and we would like to have it as a standing objection.

"The Court: Are these offered for the purpose of impeachment?

"Mr. Mahoney: Yes, Your Honor.

"The Court: Then defendant may have a standing objection.

"Q. (By Mr. Mahoney) Would you answer the question? A. Not in May, no.

"Q. In what month was it? A. Well, I was arrested in May in Pocatello, Idaho, and back to Portland, Oregon in 1934.

"Q. What were you arrested in Pocatello, Idaho, for? A. Well, I had taken a girl from Spokane to Portland and we lived as man and wife.

"Q. So, you were arrested of violation of the Mann Act or White Slavery Act? A. Well, yes, I was.

"Q. Is it true at that time you spelled McCray. M-c-C-r-e-y? A. No, I spelled just like I write it all the time.

"Q. You have never used any other name? A. No other name.

"Mr. Stevens: We are now going to make an objection in the record on the grounds and for the reason this is improper impeachment. It is in the record that this man never used the name McCrey, the undisputed testimony that he neither writes his own name and signs only one way.

"The Court: Inquiry as to the spelling is wholly material. The objection is overruled.

"Q. (Mr. Mahoney) Mr. McCray, in 1919, were you convicted in Salem, Oregon of the crime of assault and robbery with a dangerous weapon? A. No.

"Q. You never were? A. No.

"Q. In 1918, were you convicted within the City of Portland, Oregon, for the crime of larceny and holdup?

"Mr. Stevens: Just a minute I object to this as an improper question, highly prejudicial in the presence of the Jury.

"The Court: Upon what grounds?

"Mr. Stevens: Upon the ground that this is not the proper questions for impeachment.

"The Court: Objection overruled.

"Q. (By Mr. Mahoney) Were you convicted in 1918, in Portland, Oregon, of the crime of larceny and holdup? A. No.

"Q. Your answer is no? A. Not larceny, no.

"Q. Were you convicted of a crime in Portland, Oregon, on that date? A. Yes, I was.

"Q. What was the crime? A. Having stolen stuff in my possession.

"Q. Is it not true that at that time you were going under the name of George Johnston? A. No, I did not go under the name of George Johnston."

█ It is a well-settled rule in this state, that where a defendant in a criminal prosecution becomes a witness in his own behalf, he may be cross-examined as to matters which tend to degrade him and for this purpose he may be asked if he has been convicted of prior criminal acts. State v. Pfaffengut, N.D., 77 N.W.2d 521; State v. Fury, 53 N.D. 333, 205 N.W. 877; State v. King, 53 N.D. 95, 204 N.W. 969; State v. Keillor, 50 N.D. 728, 197 N.W. 859; State v. Rozum, 8 N.D. 548, 80 N.W. 477; State v. Kent (State v. Pancoast), 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518.

When tested by this rule, there were only two questions asked by the state's attorney in the examination above set forth which might be considered objectionable. They are:

"Q. What were you arrested in Pocatello, Idaho, for? A. Well, I had taken a girl from Spokane to Portland and we lived as man and wife.

"Q. So you were arrested of violation of the Mann Act or White Slavery Act? A. Well, yes, I was."

█ The foregoing questions were not proper impeaching questions. A defendant in a criminal prosecution may be asked if he has committed a degrading act or if he has been convicted of committing one. He may not be asked if he has been arrested for committing such an act, because the fact of arrest is not proof of guilt. In this case, however, the asking of the questions did not constitute re-versible error for two reasons. In the first place there were no appropriate objections to the questions and in the second place the defendant in his answer cured whatever error there might have been in the question by clearly admitting that he committed the crime for which he was arrested.

The judgment of the district court is affirmed.

SATHRE, C. J., and MORRIS, J., concur.