STATE of North Dakota, Plaintiff and Appellee,

v.

Terry JOHNSON, Defendant and Appellant.

Crim. No. 500.

Supreme Court of North Dakota.

May 2, 1975.

Rehearing Denied June 24, 1975.

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellee.

Benjamin C. Pulkrabek, Public Defender, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

On October 18, 1974, a Morton County district court jury found the defendant, Terry Johnson, guilty of the crime of burglary. He brings this appeal from that conviction contending that (1) the court erred in allowing the State to question the defendant as to prior crimes and crimes of which it subsequently appeared that defendant had not been convicted, (2) the court erred in not granting the defendant's requested jury instructions concerning alibi and equivocation, (3) the court erred in not granting the defendant's motion to seques-

ter the State's witnesses prior to the start of the trial, (4) the court erred in allowing the introduction of cumulative evidence, and (5) the verdict was contrary to the testimony and evidence presented at the trial.

During the early morning hours of March 24, 1974, Mr. Walter Siegfried of Mandan was awakened from his sleep by a loud sound. He went to his window to investigate the source of this disturbance and in looking out, observed two persons in front of a nearby grocery store, one of whom appeared to be prying out the front window of the store. Mr. Siegfried called the Mandan city police and upon returning to the window, saw that the two persons he had previously observed were leaving the area on foot. Shortly thereafter, Mandan city police officers, Captain Leo Snider and Lieutenant Hugo Ternes, arrived at the grocery store. They immediately radioed to Officer Raymond Huff, who was proceeding toward the grocery store in another vehicle, instructing him to follow an automobile they saw departing the area.

The officers' testimony indicated that the vehicle they had observed had a defective right taillight or brakelight and that there were no other vehicles or other persons in the area at that time.

After contacting Officer Huff, the two officers began their investigation of the store. Finding no one therein, Officers Snider and Ternes once again made radio contact with Officer Huff and then drove to the Island Park Trailer Court where Officer Huff reported he had stopped an automobile which he had followed. The occupants of this automobile, one Larry Belgarde and the defendant, Terry Johnson, were placed under arrest. Their automobile, which had a defective right brakelight or taillight, was found to contain a quantity of cigarettes and beer, some of the beer being of the same brand as two bottles of beer which were later found in the grocery store.

Officer Huff and an Officer Thomas Joblinski, who arrived at the trailer court to assist him, testified that Belgarde and Johnson complained of hunger. Officer Joblinski further testified that he followed the path taken by Officer Huff and the vehicle occupied by Belgarde and Johnson, that the tracks of two vehicles were apparent in the freshly fallen snow, that one set of tracks had been made by Officer Huff's vehicle, and that in traveling this route, he found a number of items such as minced bologna, potato chips, and wieners lying near the road.

In due course, Officers Snider and Ternes returned to the grocery store to complete their investigation. At the store they met Police Photographer Lieutenant Boniface Silbernagel who took several pictures there and was later directed by Lieutenant Ternes to take pictures of the various items which Officer Joblinski had found in following the path taken by Officer Huff and the car occupied by Belgarde and Johnson. At trial, several of these items were identified by the proprietor of the burglarized grocery as having come from her store. Other items were identified as being of the same brand as goods the proprietor had in stock at the time the crime was committed.

■ We conclude relevant to Johnson's initial contention that:

"It is a well-settled rule in this state, that where a defendant in a criminal prosecution becomes a witness in his own behalf, he may be cross-examined as to matters which tend to degrade him and for this purpose he may be asked if he has been convicted of prior criminal acts. * * *" State v. McCray, 99 N.W.2d 321, 325 (N.D.1959). See also State v. Moe, 151 N.W.2d 310 (N.D.1967), and State v. Pfaffengut, 77 N.W.2d 521 (N.D. 1956).

■ However, we have said that:

" * * * for the purpose of impeachment the most reasonable practice, and the one generally prevailing, minimizing prejudice and distraction, is that beyond the name of the crime, the time and place

of conviction, and the punishment, further details may not be inquired into. * * * " State v. Moe, 151 N.W.2d 310, 320 (N.D.1967).

In light of this rule, inquiry into the details of the burglary of which Johnson had been previously convicted was technically improper. The questions follow:

"Q. When did that occur?

"MR. PULKRABEK: Your Honor, I don't think we have to go into that. It is not material. A statement of a conviction is sufficient. I would object.

"MR. SCHNELL: I am just going into the credibility of the witness.

"COURT: The objection is overruled.

"A. What was the question?

"Q. When was that burglary? When did that burglary occur that you were convicted of?

"A. Last August.

"Q. Where did it occur?

"A. In Bismarck.

"Q. And where in Bismarck did that occur?

"A. You mean location?

"Q. Yes

"A. Dick's Gun and Marine."

Pertinent here is Rule 52(a), N.D.R. Crim.P., which provides that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The explanatory note to this rule states that "generally, it may be said that the defendant has the burden of showing that a technical error has affected his substantial rights [Black v. United States, 309 F.2d 331 (8th Cir. 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963)] * * *."

█ Having considered the entire record and the probable effect of the questions in the light of all the evidence, we find beyond a reasonable doubt that a substantial right of the defendant has not been affected and that this improper questioning constituted only harmless error and will be disregarded.

Shortly after the aforesaid testimony was given, the following exchange took place between the State's Attorney and the defendant:

"Q. Mr. Johnson, I want to show you what is marked as State's Exhibit 27 which is a communication from the United States Department of Justice and it states a number of items, which purportedly has to do with your Criminal record and ask you if these are correct and you can explain those to me.

"A. Assaulting a police officer, I don't know where that come from.

"Q. Is it on your record?

"A. I never got to Court for it so I don't know.

"MR. PULKRABEK: Your Honor, I am going to object to this whole line of questioning and ask that it be stricken. Mr. Schnell could have gone over to Bismarck and got a correct copy of this. He is bringing out things that he has laid no foundation for. I don't think he can lay any foundation until he has—. I think the Exhibit is improper and ask that any testimony that he brings out in this regard, unless he can lay the foundation, that it be stricken and the jury asked to disregard it.

"MR. SCHNELL: We have not offered it yet, we are just examining from it.

"COURT: I believe the objection is well taken because he has admitted certain crimes and denied some others on it so the objection is sustained."

█ In accord with the Supreme Court of Minnesota, we do not approve of the use of FBI "rap sheets" for impeachment purposes.

" * * * before a prosecutor asks a defendant about a prior offense, he should have good reason to believe that there was in fact a conviction. Recently, in State v. Williams, Minn., 210 N.W.2d 21 (1973), we cautioned against the use of

FBI 'rap sheets' for impeachment purposes because they are merely investigatory tools and do not necessarily contain complete information. The procedure recommended in Williams is for the prosecutor to inquire about prior crimes only when he can produce evidence, such as a certified copy of the judgment of conviction, to rebut a denial." State v. Michaelson, 298 Minn. 524, 214 N.W.2d 356 (1973).

■ We do not decide today whether an error has occurred in the use of the "rap sheets" since this question is not properly before us. The proper time to object to the introduction of evidence is when it becomes apparent that error will be committed by receiving that evidence, as when a question is asked which is in itself improper or calls for an improper answer. An objection to a question comes too late after the question has been answered. See State v. Albers, 211 N.W.2d 524 (N.D.1973); State v. Julson, 202 N.W.2d 145 (N.D.1972). A remedy in such cases is to strke the question and answer from the record. The record indicates that when the trial judge sustained the defendant's objection but failed to rule on his request that the testimony elicited through the State's Attorney's use of the "rap sheet" be stricken from the record and the jury be asked to disregard it, the defendant failed to pursue his remedy. When his objection was sustained, the defendant should have again urged the court to order the testimony stricken and to admonish the jury to disregard it. Having not done so and having not moved in the alternative for a new trial, he cannot now claim that he was prejudiced after permitting the case to go to the jury.

The defendant further contends that the court erred in allowing the following question:

"Q. Was it possible that the assaulting the peace officer *charge* was in regard to that? [Emphasis added.]

"MR. PULKRABEK: Object to that your Honor. It is not relevant to this case. Mr. Schnell simply wants to dwell on the fact that my client has committed some prior crimes. My client has answered those questions. Any further inquiry is improper.

"MR. SCHNELL: We are going into his truth and veracity.

"COURT: The objection is sustained."

■ While a defendant in a criminal prosecution may be asked if he has committed a degrading act or if he has been convicted of committing one, he may not be asked if he has been arrested for committing such an act, since the fact of arrest is not proof of guilt. State v. McCray, 99 N.W.2d 321 (N.D.1959). This view is widely accepted. See, e. g., People v. Norwood, 54 Ill.2d 253, 296 N.E.2d 852 (1973); People v. Baltimore, 7 Ill.App.3d 633, 288 N.E.2d 659 (1972); State v. Mullen, 216 N.W.2d 375 (Iowa 1974); People v. Johnson, 46 Mich. App. 212, 207 N.W.2d 914 (1973); Graves v. State, 489 S.W.2d 74 (Tenn.Crim.App.1972); and Gabrielson v. State, 510 P.2d 534 (Wyo. 1973).

■ However, we will not consider here whether the State's Attorney's reference to the "charge" would warrant reversing the decision as the defendant again failed to pursue remedies available to him when his objection was sustained. When his objection was sustained, defendant made no motion for mistrial nor did he move that the jury be instructed to disregard the testimony. He seeks here, as in the case of the testimony discussed previously, to appeal from a ruling in his favor. The court has denied him nothing.

The Court of Appeals of Michigan, in discussing a case involving several errors, including impermissible questions by the prosecutor concerning crimes of which the defendant had not been convicted, said:

"When counsel was successful in objecting to questions, the mere asking of which was prejudicial, he should have moved for a mistrial. Failing in that, he should have asked that the prosecutor be reprimanded and the jury instructed.

Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure. * * * " People v. Eldridge, 17 Mich.App. 306, 169 N.W.2d 497 (Mich.Ct.App.1969).

■ We note that Johnson's testimony indicates that he had previously been convicted of the crimes of burglary, possession of stolen property, and possession of a controlled substance and that under these circumstances, the prejudicial effect of an improper reference to one additional crime would be minimal. But see State v. Massa, 512 S.W.2d 912 (Mo.Ct.App.1974).

■ Johnson's next contention is that the court erred in not granting his requested instructions regarding alibi and equivocation. The alibi instruction requested was North Dakota Pattern Jury Instruction 1302. The application of this instruction does not extend to every case in which the defendant has introduced testimony tending to prove that he could not have committed a particular crime but rather is restricted to cases in which the defendant has introduced evidence tending to prove that he was not present at the time and place at which he is alleged to have committed the offense for which he is on trial. In the case before us, Johnson's testimony tends to indicate that he was passed out or asleep or otherwise incapable of committing the act with which he was charged and that he doesn't know where he was at the time of the burglary. His testimony does not indicate that he was at some other place at the time the burglary was committed. Accordingly, the trial court was correct in not giving the requested alibi instruction.

■ Somewhat related is the instruction requested by Johnson regarding equivocation. North Dakota Pattern Jury Instruction 1308 provides that in cases where the evidence will admit of two constructions or interpretations, each of which appears reasonable and one of which points to the guilt of the defendant while the other points to his innocence, the jury must adopt the interpretation which will admit of the defendant's innocence and reject that which points to his guilt.

We conclude that in view of the court's instructions regarding the testimony of the defendant, weight and credibility, presumption of innocence and burden of proof, the definition of reasonable doubt, and impeachment, it was not necessary to give the requested equivocation instruction, because the facts in evidence were sufficiently and properly covered by the other instructions.

■ We also conclude that the court did not commit error in not granting the defendant's motion to sequester the State's witnesses. The exclusion of witnesses from the courtroom is a matter resting within the sound discretion of the trial court. United States v. Robinson, 502 F.2d 894 (7th Cir. 1974); United States v. Miller, 499 F.2d 736 (10th Cir. 1974); People v. Burley, Colo., 523 P.2d 981 (1974).

As an example of the necessity of sequestering witnesses in this case, Johnson points to the fact that after listening to the testimony of other witnesses, Officer Ternes used a report issued by the United States Weather Bureau office in Bismarck to refresh his memory as to the weather conditions at the time of the burglary. A trial is a search for truth. A crucial question here was whether or not it snowed in Morton County during the evening hours of March 23 or the early morning hours of March 24, 1974. Not nearly so important was whether Officer Ternes had a personal recollection of local weather conditions during that period. Furthermore, the fact that he may have relied on a report rather than on his own memory was brought out on cross-examination and thus disclosed to the jury. Clearly this is not an example of abuse of judicial discretion, nor do we find upon examining the record that abuse of discretion is indicated elsewhere.

■ Like the question of sequestering witnesses, the admission or rejection of cumulative evidence lies within the discre-

tion of the trial court, and a ruling thereon will not be held erroneous unless an abuse of such discretion appears. See People v. Manier, Colo., 518 P.2d 811 (1974); State v. Maxwell, 222 N.W.2d 432 (Iowa 1974); State v. Newman, 179 Neb. 746, 140 N.W.2d 406 (1966).

■ Johnson contends that because the items themselves were introduced, the introduction into evidence of photographs of the items found strewn along the road and of one of the beer bottles found in the grocery store was merely cumulative and therefore prejudicial in that the introduction of these photographs served only to once again place the same evidence before the jury. It is the State's Attorney's position that these exhibits are not merely cumulative, because they aid in establishing the location where various items were found. While their value in this respect is not overwhelming, we will not say that the trial court abused its discretion in admitting the photographs. These photographs are neither shocking nor inflammatory. In the absence of circumstances not present here, the introduction of a reasonable number of photographs of such items cannot be said to so overwhelm the jury with repetitious evidence as to cause prejudice even though the items themselves have been introduced.

It is Johnson's final contention that the jury verdict was contrary to the testimony and evidence presented at trial. We do not agree.

■ While the State has presented a case based upon circumstantial evidence, a sufficient number of such circumstances, all consistent with defendant's guilt, will permit a reasonable conclusion that in their aggregate they are not just a series of unfortunate coincidences.

■ As we said in State v. Champagne, 198 N.W.2d 218 (N.D.1972), where the jury has weighed the evidence, determined the credibility of the witnesses who appeared before it, and rendered its verdict, it is not for us to substitute our judgment for that of the jury. It is only for us to determine whether the evidence supports the verdict. In this case, we conclude that the evidence does support the verdict.

While we are not required to explain the process by which the jury arrived at their determination, we find upon reviewing the evidence in the light most favorable to the verdict, that the jury could have concluded from the eyewitness testimony of Walter Siegfried and from the testimony of Officers Snider and Ternes, who inspected the scene, that Frank's Grocery Store in Mandan was burglarized by two persons who broke the front window during the early morning hours of March 24, 1974.

The jury also could have found from the testimony of Officers Snider and Ternes that a vehicle observed leaving the area of the grocery store had a defective right taillight or brakelight; from the testimony of Officers Snider, Ternes, and Huff that there were neither other vehicles nor other persons in the area at the time; that this vehicle was followed and subsequently stopped by Officer Huff; and that one of the occupants of this vehicle was the defendant Terry Johnson.

The jury could further have found from the testimony of Officers Joblinski, Snider, and Ternes and of Police Photographer Silbernagel that a very light layer of freshly fallen snow covered the ground that night.

The jury could have found from the testimony of Officer Joblinski that over a particular part of the path taken by Officer Huff in following the vehicle occupied by Johnson, only two sets of tire tracks were visible in the freshly fallen snow; from the testimony of Officers Joblinski and Ternes and of Police Photographer Silbernagel that a jar of mayonnaise, a stick of bologna, a bag of potato chips, a double pack of weiners, a loaf of bread, and four packages of cigarettes were found near the path taken by the two vehicles; from the testimony of Officer Ternes that in spite of the subzero temperatures in Mandan at that time, the groceries had not yet frozen when they were found; and could have concluded that

the items found lying near the tire tracks were thrown there by the defendant and his companion.

In addition, the jury could have found from the testimony of the several officers that Johnson was hungry and without money; that two bottles of beer found in the grocery store were of the same brand as a quantity of beer found in the car used by Johnson; and from the testimony of Madaline Frank, the proprietor of the store, that she did not sell beer and that the beer bottles were left in the store by the burglars.

Finally, the jury could have found on the basis of the testimony discussed above and the testimony of Madaline Frank, who specifically identified some of the items found as having come from her store, that on March 24, 1974, Terry Johnson broke into and entered the grocery store with the intent to unlawfully take therefrom the items enumerated above.

■ Having examined the entire record, we conclude that the evidence supports the verdict, that the record does not present other grounds for reversal, and that accordingly the verdict must stand.

SAND and PAULSON, JJ., concur.

PEDERSON, Judge (concurring specially).

I concur in the results because, from the entire record, I can only conclude that the defendant was convicted by a fair, but not a perfect trial. [See State v. Iverson, 187 N.W.2d 1, 44 (N.D.1971).]

The majority opinion and the dissent overlook the basic rules applicable to the use of collateral matters to attack the credibility of a witness. Periodically the courts ought to re-examine the basic rules in order to keep from overextending. Much of the public dissatisfaction with the judicial system, especially in the field of criminal law, relates to this very matter.

The restrictions imposed on the use of collateral matters in the cross-examination of any witness, in both criminal and civil trials, to discredit a witness, are founded on the principle that the jury needs to be protected from being led into indefinitely multiplied issues to the extent that they lose sight of the real issue.

When the witness being cross-examined happens to be the defendant in a criminal trial, he is subject to the rules. His testimony can be discredited by impeachment. As the majority opinion says, "he may be cross-examined as to matters which tend to degrade him." [State v. McCray, 99 N.W.2d 321, 325 (N.D.1959); State v. Moe, 151 N.W.2d 310 (N.D.1967); State v. Pfaffengut, 77 N.W.2d 521 (N.D.1956).]

Perhaps in this case the prosecutor thought that a "charge" or an "arrest" was the commission by the defendant of a degrading act—although I doubt that. Everyone assumes that a "conviction" is proof of the commission of a degrading act but I believe that the courts are wrong if they assume that only "convictions" can prove that a degrading act was committed.

The prosecutor was wrong if he tried to leave with the jury an impression that being accused of a crime is the same as being convicted of a crime. Juries are not that gullible.

Terry Johnson's credibility was destroyed when he admitted to his conviction of a number of crimes. Any discussions about an arrest or charge, even if you assume that they reflect the doing of a degrading act, which did not result in a conviction, would be at worst cumulative, but more likely would tend to show that the crediblity of police officers and prosecutors is not assumed to be unassailable. It did not prejudice the jury against the defendant in this case. If we are to protect a defendant from being prejudiced on cross-examination, we must prevent him from being examined about collateral convictions. No court has gone that far. I am authorized to say that Justice Sand agrees with the views expressed herein.

VOGEL, Judge (dissenting).

Agreeing with much of the opinion of Chief Justice Erickstad as I do, I regret that I must dissent on one point. I believe it was error to allow the State's Attorney to interrogate the defendant as to nonexistent or unproved convictions and to interrogate as to arrests, as distinguished from convictions. I believe the asking of such questions is a fundamental invasion of the defendant's rights, even in the absence of objection or motion to strike, so long as the State's Attorney does not prove or offer to prove the existence of convictions to justify his right to ask the questions.

Even more so is there error where the defendant's attorney makes a motion to strike, as he did during the trial, and that motion to strike is ignored by the court.

The facts are correctly stated in the majority opinion, but I would add the following excerpt from the transcript to the excerpts quoted by the majority:

"Q. Have you had any other convictions for burglary?

"A. No, I haven't.

"Q. Now, you have had a conviction of possessing stolen property. When did that occur?

"A. About four years ago.

"Q. Have you ever been convicted of assaulting a peace officer?

"A. No, I haven't."

It has been the law of this State for more than 75 years that it is improper to ask whether or not a witness (including a defendant who testifies in his own behalf) has been "accused" or whether it was "claimed" that he committed a crime, ". . . because all that may have been true, and yet no such crime as claimed have [*sic*] been committed." State v. Kent, 5 N.D. 516, 557, 67 N.W. 1052, 1064 (1896).

The majority opinion recognizes the existence of the rule and admits it was violated by the State's Attorney in this case, but excuses it by saying that the violation was "technically improper," that the objections and motion to strike were not made at the appropriate time in the appropriate words, and that the improper questioning was "only harmless error" and, since the defendant admitted having been convicted of some crimes, " . . . the prejudicial effect of an improper reference to one additional crime would be minimal."

With all of these assertions I disagree.

I disagree just as strongly with the basis of the special concurrence. Speaking first to the special concurrence, in my view the prohibition of cross-examination as to arrests and charges of crime is based on far different considerations from the restrictions imposed on the use of collateral matters in cross-examination. Cross-examination on collateral matters is indeed limited because of the danger of losing sight of the real issues in the case, but the prohibition against cross-examination as to arrests is additionally based on the obvious fact that it is unfair to a defendant to give jurors the impression that he has been guilty of crimes other than the one he is being tried for, when in fact he has not been so convicted or the prosecutor cannot prove that he was. See Wigmore on Evidence, Chadbourn Revision, IIIA, § 980a. If the rule were otherwise, very few people would dare take the witness stand in their own defense, since the prosecutor would be free to take random shots at reputations imprudently exposed or ask groundless questions to waft unwarranted innuendoes into the jury box. See Goodman v. United States, 273 F.2d 853 (8th Cir. 1960). Certainly the prohibition against such conduct is based upon more fundamental reasons than merely keeping the length of trial within bounds.

Furthermore, I think the concurring opinion treats much too broadly the rule that witnesses may be asked about the commission of degrading acts. An arrest, as such, is not a degrading act by the defendant, although it may have a tendency to degrade him. It is, however, involuntary on his part, and he cannot be blamed for the deg-

radation, as he can for the commission of acts he himself committed.

Both the majority opinion and the concurring opinion, it seems to me, fail to adequately recognize the essential unfairness of letting a prosecuting attorney leave with the jury the impression that a defendant is guilty of nonexistent crimes.

The State's Attorney is not an ordinary advocate. He is at least a quasi-judicial officer, with broad discretion to prosecute or not, and his ethics should correspond to those of the bench. O'Neill v. State, 189 Wis. 259, 207 N.W. 280 (1926); State v. Polan, 78 Ariz. 253, 278 P.2d 432 (1954).

"It would be as impossible for the jury to believe as it is for us to conceive that the district attorney would ask questions of this character without any information whatever upon which to predicate the question. If he had no such information and sought by a question of that type to instill in the minds of the jury the idea that there was some information in his possession which justified the question, the misconduct would have been immeasurably greater than if the facts were that he had information which justified the question. A district attorney is charged with the public duty of seeing that the defendant has a fair trial. The jury is aware of this fact and must have assumed that he had information which justified the question. . . . The real question is: Has the defendant had a fair trial? . . ." People v. Anthony, 185 Cal. 152, 196 P. 47, quoted in People v. Douglas, 83 Cal.App.2d 80, 82–83, 187 P.2d 819 (1947).

The California Supreme Court, sitting en banc, stated the California rule to be that cross-examination is limited by the requirement that it must be conducted in good faith. People v. Perez, 58 Cal.2d 229, 23 Cal.Rptr. 569, 573, 373 P.2d 617, 3 A.L.R.3d 946 (1962).

It is a violation of the Code of Professional Responsibility for a prosecutor (or any other lawyer) to

"State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence." Code of Professional Responsibility, DR 7–104(C)(1), adopted by State Bar Association of North Dakota in 1970.

See, also, American Bar Association Standards Relating to the Prosecution Function, ¶ 5.8(d); and American College of Trial Lawyers Code of Trial Conduct 19(a)(1).

I suggest that a defense attorney is placed in an impossible position if he is required to adhere to all the niceties of timing and phraseology in making objections to a prosecutor's questions which assume misconduct on the part of the witness. The defense attorney, as well as the jury, has some right to believe in the good faith of the prosecutor. He has the right to assume that the prosecutor has a basis for asking a question. In People v. Lo Cigno, 193 Cal.App.2d 360, 388, 14 Cal.Rptr. 354, 372 (1961), the District Court of Appeal said:

"These and many other questions of the district attorney implied the existence of facts which the People made no effort to prove and had no reason to believe could be proved. This was misconduct. It was improper to ask questions which clearly suggested the existence of facts which would have been harmful to defendant, in the absence of a good faith belief by the prosecutor that the questions would be answered in the affirmative, or with a belief on his part that the facts could be proved, and a purpose to prove them, if their existence should be denied."

No objections were made. See People v. Lo Cigno, supra, 14 Cal.Rptr. at 369–370.

All the more is the defense attorney's position made difficult when he has made a proper motion to strike, and the trial court ignored it. The majority opinion says that the defense attorney should have "again urged the court to order the testimony

stricken and to admonish the jury to disregard it." I suggest that an attorney who has made an appropriate motion need not court a contempt citation in order to preserve his record.

The majority opinion seems to be saying that if one has been convicted of burglary, possessing stolen property, and possession of a controlled substance, there are no restrictions on interrogation as to arrests or imaginary and nonexistent convictions. I cannot agree.

The Federal courts are required to notice "plain error" even though not objected to. Rule 52(b), F.R.Crim.P. Our North Dakota rule is the same, but uses the term "obvious error." Rule 52(b), N.D.R.Crim.P. This latter rule is new to North Dakota. (See article, "An Introduction to the North Dakota Rules of Criminal Procedure," by Charles M. Travis and John E. Jacobson, 50 N.D.L.Rev. 1, at 22.)

We have recently adopted the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that:

". . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." State v. Hilling, 219 N.W.2d 164, 172 (N.D.1974).

In State v. Bragg, 221 N.W.2d 793 (N.D. 1974), although not deciding the present issue, we rather pointedly referred to Rule 52(b), N.D.R.Crim.P., and the *Chapman* rule in discussing the effect of interrogation which improperly brought out that the defendant had exercised his right to be silent under the Fifth Amendment.

As the Eighth Circuit Court of Appeals said in Echert v. United States, 188 F.2d 336, 341–342, 26 A.L.R.2d 752 (1951):

"When, in the prosecution of a defendant, counsel for the government indulges in unfair and improper cross-examination, the only purpose of which is to degrade the defendant and to prejudice the jury against him, the government, upon appeal, will not ordinarily be heard to say

that the methods which were used did not have the effect which they were obviously intended to have."

The United States Court of Appeals for the Eighth Circuit has held to be prejudicial the questioning of a defendant as to arrests, where some of the questions were objected to and some were not. Packineau v. United States, 202 F.2d 681 (8th Cir. 1953).

It is true, as stated in the majority opinion, that the Minnesota Supreme Court, in Bryant v. Larson, 298 Minn. 533, 214 N.W.2d 359 (1974), held that disclosure to the jury that the defendant had been charged with an offense, even though the charge was later dismissed, was harmless. Even if we were to adopt that rule, it would be inapplicable here, because it is by no means clear that there ever was a charge of assaulting a peace officer. But in Minnesota, the same Supreme Court, in State v. Williams, 297 Minn. 76, 210 N.W.2d 21 (1964), held:

"Since the 'rap sheet' relied upon failed to provide a factual predicate for the cross-examination pursued, the questions asked concerning nonexistent convictions were both improper and prejudicial." 210 N.W.2d at 26.

In this State, however, we have limited the harmless error rule in criminal cases by requiring that the trial be fair even where the evidence is ample for conviction. State v. Haakenson, 213 N.W.2d 394 (N.D.1973); State v. Schlittenhardt, 147 N.W.2d 118 (N.D.1966). To the same effect, in Arizona, see State v. Polan, *supra*.

Whatever the Minnesota rule may be, I would adhere to the California rule and to the spirit of our own holdings, and would hold that the repeated interrogation of a defendant by a State's Attorney on arrests and nonexistent or unprovable convictions is prejudicial error requiring reversal.