PEOPLE v GOULD

1. DRUGS AND NARCOTICS—POSSESSION—LICENSE.

Lack of a license is an element of the crime of unlawful possession of narcotics.

2. DRUGS AND NARCOTICS—LICENSE—BURDEN OF PROOF.

Lack of a license to possess narcotics is proved *prima facie* where the prosecution introduces the properly-sealed affidavit of the executive secretary of the State Board of Pharmacy stating that the defendant is not so licensed (MCLA 335.54a).

3. DRUGS AND NARCOTICS—POSSESSION—EVIDENCE.

Sufficient evidence of possession of narcotics existed where heroin and hypodermic needles were found beneath defendant's window, and a witness testified that the defendant threw something out of that window.

4. DRUGS AND NARCOTICS—SALE—EVIDENCE.

Sufficient evidence of a sale of narcotics did not exist where an informer asked for drugs and put money on a table and the money was placed in the defendant's pocket, but where the defendant told the informer that he must wait and no agreement as to the quantity or price of drugs is proved.

5. DRUGS AND NARCOTICS—POSSESSION—EVIDENCE.

Testimony by a police informer that a defendant in a trial for possession of narcotics was helping another person give himself a "fix" while he was present in defendant's apartment is relevant to prove that defendant possessed narcotics, and such testimony is not incompetent merely because it tends to prove another crime.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 16.

[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 45.

[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 22.

Construction and effect of "sale" or "sell" in Uniform Narcotic Drug Act, 93 ALR2d 1009.

[5] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 47.

Appeal from Genesee, Elza H. Papp, J. Submitted Division 2 February 1, 1972, at Lansing. (Docket Nos. 11130, 11131.) Decided May 25, 1972. Leave to appeal denied, 388 Mich 767.

John Gould was convicted of unlawful sale and possession of narcotics. Defendant appeals. Conviction for sale of narcotics reversed. Conviction for possession of narcotics affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

*Leonard B. Shulman,* for defendant on appeal.

Before: DANHOF, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

T. M. BURNS, J. Defendant was convicted on November 10, 1967, by a jury of the offenses of unlawful sale and possession of narcotics. MCLA 335.152; MSA 18.1122 and MCLA 335.153; MSA 18.1123. On August 3, 1970, a motion was made by defendant, through appointed counsel, for a new trial. The motion was denied by the trial court on January 22, 1971. On March 1, 1971, an order of this Court was entered granting defendant's application for leave to appeal. A claim of appeal was filed on September 7, 1971. We will discuss the issues in the order presented.

1. *Did the prosecution introduce sufficient evidence of nonlicense to possess narcotics?*

Our Supreme Court, in *People v Rios,* 386 Mich 172 (1971), held that the lack of a license is an

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

element of the crime of unlawful sale of narcotics. It is defendant's position that the *Rios* decision is equally applicable to unlawful possession of narcotics since both statutes have similar language in regard to nonlicense.

We agree. However, in the instant case, the people did introduce a properly sealed affidavit by the executive secretary of the Michigan Board of Pharmacy which complies with the Supreme Court's opinion in *Rios* with regard to MCLA 335.54a; MSA 18.1074(1) which provides:

"At the trial of any civil or criminal cause, or at the hearing of any matter by an administrative tribunal or a hearing officer thereof, in this state, a certificate stating that any person named therein is or is not licensed pursuant to the provisions of sections 3 and 4 of this act for the period, or at the time stated therein and certified and signed by the director of drugs and drug stores and bearing the seal of the state board of pharmacy, shall be received in evidence if material to the determination of the cause, and it shall be deemed to be prima facie proof of the facts stated therein."

We hold that the affidavit by the executive secretary of the board, which was notarized and had the board's seal affixed thereto, is sufficient to satisfy the requirements of the statute and formed an adequate basis upon which the jury could have found that defendant did not have the necessary license.

2. *Did the prosecution introduce sufficient evidence to prove possession and sale of heroin?*

The transcript of proceedings reveals that on July 29, 1966, witness Leo Horton, employed by the police as an informer, met with members of the Flint Police Department. He testified that, at the time, he was searched by officers before starting on the mission in question and was given

money by the officers with which to make a contemplated purchase of narcotics. Officer William Boudreau, in charge of this case, testified that he gave the witness $11 in bills, the serial numbers of which had been recorded. Witness Horton testified that he was driven to an address in the City of Flint where he was admitted into a house by defendant Gould. He stated that he went into the kitchen of the upstairs apartment, where he subsequently made a "purchase" of heroin. Defendant purportedly told the witness, in response to his request for heroin, that he would have to wait. Witness Horton testified that he had laid the money, which had been given to him by the officers, on the table in the kitchen. No conversation appears to have been had between witness Horton and the defendant regarding such things as price or quantity of heroin to be purchased. While the witness was waiting to be served by defendant, the officers, some of whom were stationed under each window outside the building, pushed in the door to the upstairs apartment and entered the premises. After the officers knocked and before they entered the premises, defendant Gould was positioned near a window. The witness testified that defendant raised the window and that he saw defendant throw something out of the window. Witness Horton did not on that occasion, or at any time, obtain anything that purported to be heroin. At the time the witness was present with defendant Gould, defendant was busy with another person helping that person "get a fix" as the witness testified.

William Boudreau, detective-sergeant on the Flint Police Force and investigating officer in charge of this case, testified that when Leo Horton went up to defendant Gould's apartment, a uniformed officer was stationed outside under each window; that 10 to 12 minutes thereafter Officer

Boudreau announced his presence at defendant's door; that he heard someone running away from the door; and that upon entry, the occupants were put against the wall. Boudreau testified that he observed another detective take the money, which had been given to Horton, from defendant Gould's shirt pocket at the time of his arrest; and the money was immediately checked against his serial number list. Officer Boudreau testified that upon searching the subject, he asked witness Horton "where is the stuff?" to which Horton responded that defendant "threw it out the window". Officer William Mendenhall, stationed outside one of the windows indicated to Officer Boudreau that he observed something come out of the window above. Officer Boudreau then observed a clear plastic vial with a plastic top lying in the driveway nearby containing gelatin capsules, with a beer can sitting beside so as to mark the spot. The officer also testified that he saw several hypodermic needles lying nearby. Officer Charles Gilmore testified that he searched John Gould in the apartment on the date in question and found some folded bills in his pocket, in amount to the money given Horton earlier by Officer Boudreau.

Charles Quick, a toxicologist, testified that the substance found on the driveway outside of defendant's premises had been found to contain heroin. He testified that heroin has no medicinal use and is illegal for anyone to buy, possess, or sell.

James Trudell, present in defendant's apartment on July 29, 1966, when Leo Horton appeared thereat to make a purchase of heroin, testified that on that date he had gone to defendant's address to get some heroin; that he had heroin with him at that time; that he did not throw anything from the window, nor did he see any of the others present at that time throw anything

therefrom. Trudell also testified that, during the period that Horton was present, he saw no negotiations of any kind between Horton and defendant; stated that he was in their presence at all times; and to his knowledge, no conversation was had about the sale of heroin to Horton.

We will first deal with the question of whether or not the evidence presented was sufficient to establish defendant's possession of the heroin beyond a reasonable doubt. In *People v Thomas,* 26 Mich App 160, 164 (1970), this Court stated:

"Defendant contends that insufficient evidence was introduced to convict him of the offense of unlawful possession of narcotics. As the Court in *People v Harper* (1962), 365 Mich 494, 507, said:

" '[T]he possession of narcotics forbidden by the Michigan act is broad enough to include narcotics knowingly placed in the trunk of one's automobile as well as narcotics forbidden by the act without qualifying language, is broad enough to include any right to disposition of narcotics exercisable by any person, whether or not the owner of the narcotics.'

"The testimony of the police officer that he saw defendant throw the contraband from the window, if believed, is sufficient to support a finding that defendant had possession or control and is sufficient to support the conviction beyond a reasonable doubt."

In the instant case, heroin was found by the police on the ground outside defendant's window; witness Horton testified that defendant had been seen by him to be by the window at times pertinent hereto; and that he had seen defendant throw something out of the window of the apartment. From these facts, the jury could infer that defendant threw the heroin, together with the hypodermic needles, out of the window of the apartment; and that defendant had had "possession" as proscribed by the statute in question.

We now turn to the question of whether the evidence produced at the trial by the prosecution was sufficient to show a "sale" of heroin. MCLA 335.51; MSA 18.1071 defines a "sale" as follows:

" 'Sale' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee."

The meaning of the word "sale" under narcotic drug acts has been interpreted to be much broader in scope than the definition given to the term in other branches of the law. See *People v Shannon,* 15 Ill 2d 494; 155 NE2d 578; 93 ALR2d 1008 (1959). In the instant case, witness Horton testified that he had requested of defendant that he be given heroin and was told to wait, laid money on the table for the purchase of the heroin, and defendant had, apparently, placed the money in his pocket.

In our opinion the above evidence is insufficient to establish a "sale" of the heroin. There was no barter, exchange, gift, or offer on defendant's part to deliver any heroin to the informer. The informer, after inquiring if he could make a purchase, was told merely that he would have to wait. There was no agreement either to the quantity of heroin to be purchased nor the amount to be paid therefor. There is no evidence that there was any agreement between the parties, whether tacit or express. While we agree with the people that there need not be a "sale" as that term is defined in a commercial context, it is our opinion that the evidence in this case falls short of the statutory requirements. The conviction for the sale of narcotics must, therefore, be reversed.

3. *Did the trial court properly instruct the jury as to the element of the crimes charged?*

The record in the instant case reveals that no objection was voiced by the defendant or his counsel to the instructions herein considered. We will not, therefore, discuss the issues raised except to state that our reading of the instructions as a whole reveal them to be adequate and fair. MCLA 768.29; MSA 28.1052; GCR 1963, 516.2.

4. *Was prejudicial testimony allowed to be presented to the jury and error thereby committed?*

Defendant claims that the testimony of witness Horton, regarding a "fix" being obtained by another in defendant's apartment, was irrelevant and immaterial to the questions of possession and sale of narcotics, had no probative value, and was, therefore, highly prejudicial.

The testimony was relevant to prove that defendant was in possession of heroin in the presence of witness Horton. The testimony was not, therefore, incompetent because it also tended to prove the commission of another crime. *People v Maglaya,* 17 Mich App 379 (1969). We find no merit to this issue.

5. *Did the prosecution's closing argument to the jury, during which it was stated that heroin was outlawed in the United States and had no medicinal purpose, prejudice the defendant?*

No showing is made by defendant as to the manner in which the statements, to which objection is voiced on appeal, were prejudicial to him. The issue is not properly briefed and, therefore, may be properly considered abandoned by this Court. *People · v Lohn,* 21 Mich App 235, 237 (1970).

Defendant's conviction for the sale of narcotics is reversed.

Defendant's conviction for the possession of narcotics is affirmed.

All concurred.