## PEOPLE v JOHNSON

1. CRIMINAL LAW—SENTENCING—JUVENILE RECORDS.

    A defendant fails to present an adequate record showing use of his juvenile record for sentencing purposes where he offers no evidence that the trial judge actually used his juvenile record but bases an assumption of use upon the customary practice of the probation department and offers no affidavits or evidence verifying this alleged general practice.

2. CRIMINAL LAW—WITNESSES—CONDUCT—HARMLESS ERROR.

    A detective's silent laughter during the cross-examination of a defense witness must be considered harmless error as not causing a miscarriage of justice where the trial judge heard defendant's objection, found no prejudice resulting from this conduct, and denied defendant's motion for mistrial, and where defendant offers the occurrence of the event without any showing of prejudice (MCLA 769.26; GCR 1963, 529.1).

3. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS.

    A prosecutor's remark that the evidence in the case proved beyond a reasonable doubt that the defendant was guilty as charged did not express the prosecutor's personal belief in defendant's guilt and was a permissible commentary upon the evidence.

4. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS.

    A single adverse reference by the prosecutor to the credibility of defendant's witnesses that "[i]t is obvious to me, and I hope it is obvious to you, that they weren't telling the truth; that they were really trying to cover up for the defendant", was im-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 4, 8.

[2] 58 Am Jur, Witnesses § 672.

[3, 4] 53 Am Jur, Trial § 486.

[5, 6] 58 Am Jur, Witnesses § 754.

[7] 58 Am Jur, Witnesses § 664.

[8, 9] 53 Am Jur, Trial §§ 35, 75.

proper, but when considered in the context of the entire summation, could be found not to be prejudicial.

5. CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR ARRESTS.

The rule that arrests cannot be used for impeachment purposes is not applicable where the jury receives knowledge of the defense witness's prior arrest through the defense counsel's direct efforts; the onus for any prejudice produced cannot be placed on the prosecutor, and the defendant must accept the burden of his own trial tactics.

6. CRIMINAL LAW—EVIDENCE—PRIOR FELONY CONVICTIONS—HARMLESS ERROR.

A trial judge's failure to exercise his discretion when requested regarding the admission of defendant's criminal record was harmless error where there was overwhelming evidence confirming defendant's guilt and a close scrutiny of the record led to the conclusion that the evidence of prior felony convictions did not contribute to defendant's conviction (MCLA 600.2159; GCR 1963, 529.1).

7. CRIMINAL LAW—WITNESSES—CROSS-EXAMINATION—DISCRETION.

The scope of cross-examination is governed by the trial judge's discretion.

8. CRIMINAL LAW—WITNESSES—INTIMIDATION.

Denial of defense counsel's request to testify to assertions of undue police pressures against and intimidation of defense witnesses does not constitute an abuse of discretion; although attorneys may testify for their clients when justice requires, the practice is not favored.

9. CRIMINAL LAW—WITNESSES—INTIMIDATION OF WITNESSES.

It was error for a trial judge to refuse to conduct an examination and inquire into the validity of an assertion of intimidation of a defense witness which had been made to him and the Court of Appeals will not hesitate to require trial judges to conduct examinations upon allegations of intimidation since the disruptive effect upon the administration of justice is outweighed by the need to guarantee a defendant's right to a fair trial.

Appeal from Genesee, Earl E. Borradaile, J. Submitted Division 2 November 8, 1972, at Lansing. (Docket No. 10598.) Decided April 23, 1973.

William M. Johnson was convicted of illegally

selling a narcotic drug. Defendant appeals. Remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, Appellate Division, and *Martin F. Palus,* Assistant Prosecuting Attorney, for the people.

*Carl H. Leiter,* for defendant on appeal.

Before: McGregor, P. J., and Bronson and Targonski,* JJ.

Bronson, J. Defendant was convicted by jury verdict for illegally selling a narcotic drug and sentenced to serve a prison term of 20 to 25 years. MCLA 335.152; MSA 18.1122. From this conviction defendant appeals, raising eight allegations of error which we consider seriatim.

At trial, the chief prosecution witness, Alberta Leone, testified that she worked regularly as a police informer "making cases" during March, 1970. On the evening of March 5, 1970, she met police detective Herbert Taylor and was taken to the police station where a routine preliminary search for the possession of narcotics was conducted. Alberta Leone was then given two $20 bills by Detective Taylor and taken to the area of defendant's apartment to consummate a controlled buy. She was admitted to defendant's apartment and in the early morning hours of March 6 allegedly purchased a half-quarter (six spoons) of heroin from defendant for $35, receiving $5 change. The controlled buy was completed by Al-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

berta Leone giving the purchased drug, subsequently identified as heroin, to Detective Taylor.

Based upon these events and the informer's affidavit, the police secured a warrant to search defendant's premises. During the execution of the warrant at approximately 1 a.m. on March 7, 1970, police officers discovered seven sterilized containers of hypodermic needles and a syringe, a box of envelopes measuring 1-1/2 inches to 3 inches, guns, heroin, and other narcotic paraphernalia. The paraphernalia included measuring spoons, containing a residue of heroin, a can of lactose, a filler used to cut the heroin, and an overnight case. The overnight case contained several bottles, cans, a sifter, small manila envelope, cards, packets, some pills, and other miscellaneous items. The testifying officers stated that these items were similar to the ones generally used to sift, cut, apportion, and package heroin for sale. During the search police officers discovered a black key case between the mattress of a folding bed in the living room. This key case, allegedly owned by defendant, revealed four small manila packages of heroin.

Defendant offered several witnesses to establish his defense that he was "set up" for the charged offense. These witnesses testified that Alberta Leone was a jealous ex-lover of defendant who prefabricated her story and "planted" the quantity of heroin on defendant's premises which was subsequently given to the police as the fruits of the alleged sale. Several witnesses further testified that Alberta Leone had told them that she was lying about her purchase with defendant "to get even with him". Defendant offered his testimony in which he (1) denied ever selling heroin, (2) reaffirmed his defense, and (3) denied possession of the black key case. Defendant admitted ownership

of the keys in his capacity as apartment manager but claimed that possession of the key case was given to one of the several persons sharing the occupancy of his apartment. At the conclusion of trial, the jury found defendant guilty of selling heroin.

I. *Did the trial court commit reversible error by considering defendant's juvenile record for the purpose of sentencing?*

Defendant alleges that the trial court committed reversible error by considering his juvenile record for sentencing purposes. In *People v McFarlin,* 41 Mich App 116 (1972), *leave granted,* 388 Mich 761 (1972), this Court held the practice of using juvenile records for sentencing purposes invalid. Accord, *People v Bukoski,* 41 Mich App 498 (1972); *People v Anderson,* 42 Mich App 10 (1972). Contra, *People v Pence,* 42 Mich App 215 (1972).

Defendant has failed to present an adequate record evidencing such use. Defendant offers no evidence that the trial judge actually used his juvenile record but bases an assumption of use upon customary practice by the Genesee County Probation Department. Similarly, defendant has neither offered affidavits nor evidence verifying this alleged general practice. This speculative record cannot support an application of *People v McFarlin, supra.*

II. *Does the Supreme Court order of* People v Martin *require a vacation of defendant's sentence of 20 to 25 years for sale of heroin and resentencing pursuant to the Controlled Substance Act of 1971?*

In the Supreme Court order of *People v Martin,*

387 Mich 766 (1972), a 20- to 25-year sentence for the sale of heroin was remanded for resentencing "in the light of 1971 PA 196". For the reasons set forth in *People v Osteen,* 46 Mich App (1973), this order has been limited to the named defendant. Since the order has not been afforded precedential effect, defendant's request for resentencing is denied.

III. *Was defendant denied a fair trial by the conduct of a police detective during the cross-examination of a defense witness?*

Defendant alleges that a detective's silent laughter during the cross-examination of a defense witness denied him a fair trial. The trial judge heard defendant's objection and the parties agreed that Detective Taylor was "sitting there soundlessly laughing". The trial judge found no prejudice resulting from this conduct and denied defendant's motion for mistrial. On appeal, defendant offers the occurrence of the event without any showing of prejudice. Upon the facts and our review of the record, the error, if any, must be considered harmless as not causing a miscarriage of justice. MCLA 769.26; MSA 28.1096; GCR 1963, 529.1; *People v Wilkie,* 36 Mich App 607 (1971).

IV. *Did the trial court commit reversible error by instructing the jury that defendant did not have a license to sell narcotics and did the prosecutor fail to prove lack of license, a requisite element of the offense charged?*

These issues are summarily disposed of since they are devoid of merit. The challenged jury instruction merely involved the trial judge's reference to the information and recitation of the ele-

ments of the charged offense, including defendant's lack of license to sell narcotics. At no time did the trial judge affirmatively instruct the jury that this defendant did not possess the necessary license. The prosecutor offered proof of this element in accordance with *People v Gould,* 40 Mich App 689 (1972).

V. *Did the prosecutor deny defendant a fair trial by prejudicial statements in his closing argument?*

Defendant bases his allegation that the prosecutor's closing argument was prejudicial in part upon the prosecutor's statement that "The evidence in this case proves beyond a reasonable doubt that Marcus Johnson, or William Marcus Johnson, is guilty as charged." Since this remark did not express the prosecutor's personal belief in defendant's guilt, it was a permissible commentary upon the evidence. *People v Rodriguez,* 35 Mich App 342 (1971); *People v Evans,* 36 Mich App 238 (1971). Contrast, *People v Humphreys,* 24 Mich App 411 (1970).

Defendant argues that the other portions of the prosecutor's closing argument were prejudicial. The entire argument discloses only the following remark which we deem improper:

" * * * [I]t is obvious to me, and I hope it is to you, that they weren't telling the truth; that they were trying to cover up for the defendant, and to put the blame really on Alberta Leone."

Although improper, this single adverse reference to the credibility of defendant's witnesses did not

reach prejudicial proportions. Contrast *People v Montevecchio,* 32 Mich App 163 (1971). The remaining challenged comments encompassed permissible commentary upon the evidence or inferences therefrom. *People v Russell,* 27 Mich App 654 (1970); *People v Joshua,* 32 Mich App 581 (1971). After considering the challenged remarks in the context of the entire summation, we do not find them prejudicial. *People v Lyle Brown,* 37 Mich App 25 (1971).

VI. *Did the prosecutor commit reversible error by cross-examining a defense witness with regard to an arrest not culminating in a conviction?*

This Court in *People v Brocato,* 17 Mich App 277 (1969), and its progeny held that *arrests* cannot be used for impeachment purposes. But *cf. People v Eddington,* 387 Mich 551 (1972).

Witnesses were accorded the protection of the *Brocato* rule in *People v James,* 36 Mich App 550 (1971). Although defendant's witnesses possessed this protection, the allegation of error must fail. The initial impermissible reference to the witness' arrest was solicited by defense counsel on direct examination. In *People v Bearden,* 29 Mich App 416 (1971), this Court denied defendant the benefit of *Brocato* when his prior arrest was elicited by defense counsel on direct examination. This rule is no less applicable to witnesses. Since the jury received knowledge of the defense witness' prior arrest through defense counsel's direct efforts, the onus for any prejudice produced cannot be placed upon the prosecutor. Defendant must accept the burden of his own trial tactics.

VII. *Did the trial judge commit reversible error by permitting the prosecutor to cross-examine defendant with regard to prior felony convictions without exercising his discretion to control the admission of defendant's criminal record?*

Defendant alleges that the trial judge committed reversible error in failing to exercise his discretion regarding the admission of defendant's criminal record upon request. In *People v Farrar,* 36 Mich App 294 (1971), this Court found that trial judges could admit or exclude prior convictions offered for impeachment purposes within their discretion. This finding was based upon *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965), which interpreted an impeachment statute similar to Michigan's statute[1] in a permissive manner. Recently, the *Farrar* decision was applied with approval in *People v Sanders,* 43 Mich App 698 (1972), and *People v Osteen,* 46 Mich App (1972). Trial judges' compliance with this grant of authority in which a determination of the probative value and prejudicial effect of each proffered conviction for the limited purpose of impeachment is made provides defendants with a vehicle for protecting and preserving their right to a fair and impartial trial.

Although the trial judge's failure to exercise his discretion upon request is error, such error was harmless[2] as not causing a miscarriage of justice[3]

---

[1] MCLA 600.2159; MSA 27A.2159.

[2] GCR 1963, 529.1.

[3] MCLA 769.26; MSA 28.1096. *See People v Robinson,* 386 Mich 551, 562 (1972) (where the Court found "the strictures of MCLA 769.26 and GCR 1963, 529.1 [to be] different articulations of the same idea * * * ").

in the present case. In *People v Wilkie,* 36 Mich
App 607 (1971), the Court adopted the harmless
error rule since the overwhelming evidence con-
firmed defendant's guilt. Accord, *People v Pruitt,*
29 Mich App 230 (1970); *People v John Wesley
Brown,* 32 Mich App 262 (1971). Defendant pre-
served the issue for appeal by timely objection,
yet, we are contrained to follow the harmless error
doctrine in the present case.

The evidence supported defendant's allegation
that he was "set up" for the charge since Alberta
Leone used her informer relationship with the
police to defendant's detriment. This proof does
not provide defendant with an adequate defense
unless his allegation that complainant "planted"
the narcotics offered as the fruits of the controlled
buy is true. The conflicting testimony of the wit-
nesses creating an issue of credibility related only
to the allegation of being "set up" rather than the
allegation that the evidence was "planted" on
defendant's premises. In this context, the issue of
credibility did not involve the critical issue in the
case by proving or disproving the proffered defense
and is distinguishable from *People v Moore,* 39
Mich App 329 (1972). The overwhelming evidence,
consisting of testimony and fruits of the legal
search supports the jury's conclusion that defend-
ant was engaged in the business of selling heroin.
A close scrutiny of the record leads us to the
conclusion that the evidence of prior felony convic-
tions did not contribute to defendant's conviction.
*People v Fry,* 17 Mich App 229 (1969); *People v
Thomas Martin,* 26 Mich App 359 (1970). Since the
result would have been no different had the trial
judge exercised his discretion and excluded defend-
ant's prior felony convictions, defendant was not
denied a fair trial.

VIII. *Was defendant denied a fair trial by the prosecutor's prejudicial cross-examination of defendant and the trial judge's failure to investigate an assertion that a defense witness was intimidated into withholding favorable evidence?*

Defendant's allegation that he was denied a fair and impartial trial by the prosecutor's prejudicial cross-examination of defendant is unmeritorious. The record reveals some degree of hostility between defendant and the prosecuting attorney which is largely attributable to defendant's propensity to answer the propounded questions indirectly or with some qualifying statement. The challenged examination occurred during the prosecutor's questioning for purposes of impeachment. The scope of cross-examination is governed by the trial judge's discretion. *People v Mobley,* 40 Mich App 551 (1972), *leave granted* 388 Mich 769; *People v Turner,* 41 Mich App 744 (1972). The defendant challenged the cross-examination, and we find no abuse of discretion in the trial judge's denial. Our close scrutiny of the entire colloquy fails to reveal harassment or prejudicial conduct by the prosecutor. See *People v Hicks,* 2 Mich App 461 (1966). Contrast *People v Brocato,* 17 Mich App 277 (1969).

Defendant's alleged denial of a fair and impartial trial is further based upon the trial judge's failure to investigate an assertion that a defense witness was intimidated by a police officer into withholding favorable testimony. Defense counsel informed the trial judge that defense witness John Brown would have given detailed testimony of conversations in which Alberta Leone admitted she "framed" defendant but for police intimida-

tion. This intimidation was allegedly based upon an officer threatening to revive an outstanding charge against the witness if he offered favorable testimony. The witness' affidavit regarding this event is attached to defendant's brief. Defense counsel sought an opportunity to rehabilitate the testimony of John Brown by placing himself on the stand to relate the assertion of undue police pressure but the trial judge denied this request.

The trial judge's denial was based upon his conclusion that it would be improper for defendant's attorney to be a witness. Although attorneys may testify for their clients when justice requires, the practice is not favored and the trial judge's ruling did not constitute an abuse of discretion. See *Shapiro v Wendell Packing Co,* 366 Mich 289 (1962); *Osborn v League Life Insurance Co,* 20 Mich App 19 (1969).

The alternative approach of conducting an inquiry into the validity of an assertion of intimidation was expressly rejected by the trial judge. This decision causes us grave concern.[4] The nature of this charge is serious indeed even though it may be easily manufactured. In *People v Butler,* 30 Mich App 561, 565 (1971), defendant alleged that he was denied favorable testimony from a witness where the prosecutor advised the witness, outside the courtroom, that he was under investigation for the same crime and had a right to refuse to testify by pleading the Fifth Amendment. Defendant's allegation of intimidation by this prosecutorial conduct was neither denied nor rebutted by brief or oral argument. The *Butler* panel reversed the

---

[4] *See People v Nettles,* 41 Mich App 215 (1972), in which the Court found that defendant was denied a fair trial by the prosecutor's failure to elicit from a prosecution witness the fact that the charges pending against him had been reduced in exchange for his testimony against defendant.

challenged conviction and remanded for a new trial, stating:

"Any interference, intimidation, or prevention concerning the right to have a witness heard leads to injustice, and our review of the entire record persuades us that there was uncalled for intimidation of this witness."

A reversal is not necessarily the only remedy to cure an allegation of intimidation for impermissible influence. In *People v Pena,* 383 Mich 402, 406 (1970), the Court remanded the case to the trial judge for a determination of whether a prosecutor's letter advising a witness of the penalty for perjury constituted intimidation. The trial court was directed to grant a new trial if intimidation was found, otherwise, state its reasons for denying a new trial. This approach comports with our imposition of a duty upon the trial judge to immediately conduct an inquiry into the truthfulness of the allegation. Justice T. G. KAVANAGH, writing a separate opinion for reversal and remand, observed that:

"For the court to conclude that the defendant could have a fair trial *without directly questioning the witnesses, without ascertaining the effect of the letter* and without attempting to reassure them, if possible, *is not acceptable."* (Emphasis added.)

Examinations of this type have been customarily employed to determine the veracity of a witness' recantation[5] or whether jurors have been adversely influenced.[6] We do not hesitate to require trial judges to conduct examinations upon allegations of

[5] *People v Krogol,* 29 Mich App 406 (1971).

[6] *People v Schram,* 1 Mich App 279 (1965), *aff'd,* 378 Mich 145 (1966).

intimidation since the disruptive effect upon the administration of justice is outweighed by the need to guarantee defendant's right to a fair trial. The trial judge's expressed rejection of this procedure constituted error. Unlike *Butler*, the intimidation does not conclusively appear upon the present record. We adopt the approach taken in *People v Pena, supra,* and remand for the requisite examination. If the trial judge finds the allegation true, defendant will be granted a new trial. If the trial judge finds the allegation false, he shall set forth the reasons for denying a new trial and defendant's conviction will be affirmed.

Remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

All concurred.