PEOPLE v KILLEBREW

1. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL RECORD—ADMISSIBIL-
   ITY—DISCRETION—EXERCISING DISCRETION—PROBATIVE VALUE—
   IMPEACHMENT—PREJUDICE.

   A court, in deciding a motion to exclude a defendant's criminal
   record for impeachment purposes, is required to exercise its
   discretion by weighing the probative value for impeachment
   purposes of the evidence against the prejudice to the defendant
   from his being identified to the jury as a person who has
   previously been convicted of a criminal offense.

2. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL RECORD—PROBATIVE
   VALUE—IMPEACHMENT—PREJUDICE—FACTORS.

   Factors to be considered in determining whether the probative
   value of evidence of a defendant's prior criminal record is
   outweighed by the prejudicial effect to the defendant are: the
   nature of the defendant's prior offenses, whether the offenses
   are for substantially the same conduct as that for which the
   defendant is on trial, and the effect on the decisional process if
   the defendant does not testify out of fear of impeachment by
   prior convictions.

3. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL RECORD—ADMISSIBIL-
   ITY—DISCRETION—LACK OF INFORMATION—REVERSIBLE ERROR.

   Failure of a court to exercise its discretion to exclude a defend-
   ant's prior criminal record from evidence, upon motion of
   defendant, was established where the court, when denying the
   motion, did not know the nature, number or dates of occur-
   rence of the defendant's prior offenses; the failure of the court
   to exercise its discretion was reversible error where the evi-
   dence of defendant's guilt at trial was less than overwhelming
   and the defendant failed to testify on his own behalf.

4. WITNESSES—UNEXPECTED RESPONSES—CRIMINAL LAW—INSTRUC-
   TIONS TO JURY—PREJUDICIAL ERROR.

   Failure to give a cautionary instruction to the jury together with

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 6] 21 Am Jur 2d, Criminal Law § 585.
[4] 75 Am Jur 2d, Trial §§ 682–692.
[5] 29 Am Jur 2d, Evidence § 324 *et seq.*

notice to disregard a witness's response may be prejudicial error where the witness unexpectedly indicated, in response to counsel's inquiry concerning defendant's job record, that the defendant obtained a job "as soon as he got out of jail".

5. CRIMINAL LAW—EVIDENCE—EVIDENCE OF OTHER CRIMES—ADMISSI-
    BILITY—STATUTES.

   Evidence in a criminal case which shows that the accused has committed another crime, wholly independent and unconnected with the crime of which he is accused, is generally irrelevant and inadmissible; however, two exceptions are allowed to this rule: first, if defendant takes the stand, thus placing his credibility in issue, and second, to show the accused's motive, intent, plan or scheme (MCLA 600.2158, 768.27).

6. WITNESSES—EVIDENCE—PRIOR CRIMINAL OFFENSES—ADMISSIBILITY
    —CONVICTIONS.

   The use of prior criminal offenses to impeach a witness is improper without showing convictions of the offenses.

Appeal from Recorder's Court of Detroit, Henry L. Heading, J. Submitted Division 1 April 14, 1975, at Detroit. (Docket No. 18315.) Decided May 27, 1975. Leave to appeal applied for.

Michael Killebrew was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *John C. Mouradian,* Assistant Prosecuting Attorney, for the people.

*Stuart M. Israel,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

ALLEN, P. J. Defendant was charged with having

robbed a Big Dipper market in the City of Detroit, February 27, 1972. Following preliminary examination he was bound over for trial on a charge of robbery armed, MCLA 750.529; MSA 28.797. A jury trial before visiting Recorder's Court Judge Harvey F. Tennen resulted in a guilty verdict June 19, 1972. Defendant was then sentenced to a term of 10 to 20 years imprisonment. A motion for a new trial was heard and granted by Recorder's Court Judge Heading, April 12, 1973.

Prior to the second trial, a motion *in limine* to exclude defendant's conviction record was made before Judge Heading for the reason that, should defendant choose to testify, the probative value for impeachment was outweighed by the prejudice to defendant, citing the cases of *People v Farrar,* 36 Mich App 294; 193 NW2d 363 (1971), *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965), *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967). The motion was taken under advisement and was denied at the conclusion of the prosecutor's case. Defendant did not take the stand. The jury returned a verdict of guilty July 16, 1973, and Judge Heading sentenced defendant on July 27, 1973, to a term of 10 to 20 years imprisonment. Defendant appeals of right, asserting error on three grounds: (1) failure of the trial court to use its discretion in deciding the motion to exclude defendant's criminal record for impeachment purposes; (2) failure of the trial court to grant defense counsel's request for a cautionary instruction regarding the prejudicial impact of an unresponsive reference to defendant's prior incarceration; (3) failure of the trial court to strike testimony that defendant possessed only a driver's permit allowing him to drive under the supervision of a licensed driver but that neverthe-

less on frequent occasions defendant drove alone and without supervision.

Both parties agree that upon proper motion being made, the trial court is required to exercise its discretion in weighing the probative credibility purpose of admitting defendant's prior criminal record against the prejudicial "bad man" effect on the jury. They disagree, however, as to whether such discretion was in fact exercised in the present case, the people claiming that discretion was exercised because the trial judge took the motion under advisement when it was initially made, and defendant contending discretion was not exercised because the trial judge did not even know the prior conviction record and consequently was unable to weigh it against the prejudicial effect on the jury.[1] The transcript discloses that after defense counsel finished making the motion the prosecutor started to inform the court as to what the prior record of the defendant was, but was peremptorily cut off by the court:

"*The Court:* All right. Do you want to be heard on that, Mr. Prosecutor?

"*Mr. Berg:* Yes, your Honor, I would. Of course, the *Farrar* decision merely says it is within the discretion of the Court. * * * It should be interesting to note that the record of the defendant—

---

[1] Citing *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), defendant also argues that a majority of the Supreme Court will exclude such testimony even for purposes of credibility. We do not agree. In *Jackson* there was not a majority to apply a rule of exclusion. Justices SWAINSON and T. M. KAVANAGH would so hold. T. G. KAVANAGH and LEVIN would wait for a court rule. WILLIAMS did not say. COLEMAN dissented and FITZGERALD did not participate. In *People v Cherry,* 393 Mich 261; 224 NW2d 286, 287 (1974), decided after *Jackson,* the Court ruled the court had discretion but failed to exercise it. Five members of the Court ruled "the trial court must positively indicate *and identify its exercise of discretion".* (Emphasis supplied.)

*"The Court:* Well, I don't want to know what the record is.

*"Mr. Berg:* All right. Just one other interesting note here.

\* \* \*

*"The Court:* All right, I will take the motion under advisement."

When the people's case was completed the jury was excused and the following proceedings were held out of the presence and hearing of the jury:

*"Mr. Reigner:* If the court please, initially I had presented to the court by way of a pretrial motion a motion to suppress the defendant's criminal record should he choose to take the stand and testify in his own behalf. And it is my recollection that the court took that under advisement at the time.

*"The Court:* All right.

*"Mr. Reigner:* I would request a ruling at this time, if the court is prepared to make a ruling on that motion.

*"The Court:* All right, your motion is denied."

On appeal, it appears to us that defendant had a prior conviction for robbery armed and two misdemeanors. This fact is important because in *Farrar, supra,* this Court stated that among the guidelines to be considered by the court were the following:

"In *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967), guidelines were suggested for the exercise of this trial judge discretion in an opinion written by Chief Justice (then Judge) Burger: Among the factors to be considered are the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions." 36 Mich App at 302–303; 193 NW2d at 367.

From the foregoing it is clear to us that the trial court postponed discretion rather than exercise it. The court did not know the nature of the prior offenses and thus could not consider whether they were or were not for substantially the same conduct, nor consider the effect they might have upon defendant's ultimate decision to take the stand. Without knowledge of the date of the prior armed robbery conviction, which apparently occurred six years before this trial, the lower court could not consider whether its probative value was minimal or significant. Likewise, the probative value of the misdemeanors could not be weighed since the court did not know their number or nature. We are not concerned that the trial court failed to "positively indicate and identify its exercise of discretion" as required by *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974). *Cherry* was decided 17 months after the present trial. But we are concerned about the lack of information without which the trial court could not possibly exercise the discretion required by *Farrar, Luck* and *Gordon, supra,* all of which were decided long before the instant trial.[2] Not only was this error but, by reason of the circumstances of the trial, the error was not harmless. See *People v Johnson,* 46 Mich App 212, 221; 207 NW2d 914, 919 (1973), where the error was considered harmless in view of overwhelming evidence of defendant's guilt. In the instant case, the evidence is less than overwhelming. The identification testimony was not strong. Of five eyewitnesses called by the prosecution only

---

[2] The *Luck-Farrar* construction of MCLA 600.2158; MSA 27A.2158 and MCLA 600.2159; MSA 27A.2159, has been followed in subsequent Michigan Court of Appeals decisions: *People v Sanders,* 43 Mich App 698; 204 NW2d 706 (1972), *People v Hatfield,* 46 Mich App 149; 207 NW2d 485 (1973), *People v Johnson,* 46 Mich App 212; 207 NW2d 914 (1973), *People v Osteen,* 46 Mich App 409; 208 NW2d 198 (1973), *People v Jackson, supra, People v Cherry, supra.*

two could identify the defendant, one of whom said her identification was based on "two glances" for a total viewing time of four to six seconds. The two identifying witnesses differed as to which description of which robber fit the defendant. Defendant offered the defense of alibi, calling six witnesses who testified he was playing cards at a private residence when the offense occurred. Although the trial court did caution the jury not to adversely consider defendant's decision not to testify, it is difficult for a jury to believe defendant's defense when he fails to testify on his own behalf. Accordingly, on this issue alone we find reversible error.

In an effort to refute the major premise that the trial court did not know defendant's prior conviction record, appellee directs attention to the fact that Judge Heading was familiar with the case, since he granted the motion for a new trial following the guilty verdict in the first trial, and also granted a motion for bond. We agree that the trial court knew of the case but disagree that he knew of the conviction record. The motion for a new trial was in no way based upon defendant's record and in no way alluded to it. Defendant's bond was first set at arraignment before the first trial by Recorder's Court Judge Joseph Gillis, and presumably was merely continued when the motion for bond routinely came before Judge Heading.[3] Further, the respected trial judge did state he did not want to know defendant's prior conviction record, a statement which in the absence of clear proof to the contrary we must assume to be true. Nothing in the record suggests the contrary.

Our decision to reverse on the first issue makes

---

[3] We have carefully reviewed the transcript in the first trial and second trial, including the proceedings occurring between the two trials and the motion for a bond. There is nothing in the file on the motion for bond which in any way details defendant's prior record.

it unnecessary to discuss issues two and three. Nevertheless, in the interest of avoiding a possible third appeal, we shall make some brief comments for guidance of the trial court. During examination of defendant's wife, the prosecution inquired into the accused's job record. Unexpectedly, the witness responded that defendant obtained a certain job "as soon as he got out of jail". Defense counsel's request for a cautionary instruction was denied but the court instructed the witness that regardless of what the prosecutor asks, "don't ever say this man was in jail". Had this been the only error on appeal we would have considered it *de minimis* and harmless. Review of the whole record on the issue indicates the prejudice to defendant was slight. Nevertheless, it has been held to be prejudicial error in *United States v Poston,* 430 F2d 706, 709 (CA 6, 1970), and should it inadvertently occur again upon retrial, a cautionary instruction together with a notice to the jury to disregard the response, should be given.

While cross-examining defendant's mother, the prosecutor inquired whether defendant had a Michigan driver's license. Defense counsel objected on the basis the inquiry was not material, and the trial court stated that unless the prosecutor connected the testimony he would strike it from the record. Defendant's mother was then allowed to testify that defendant had only a permit allowing driving under the supervision of a licensed driver. Since other witnesses testified that defendant often drove his car without the supervision of a licensed driver, conduct constituting the separate and unrelated misdemeanor of driving a vehicle without a valid license, MCLA 257.904a; MSA 9.2604(1), was revealed to the jury. The prosecutor never made any connecting-up argument, but the trial judge failed to strike the testimony from the record.

Defense counsel never renewed his request to strike the testimony.

Evidence showing the accused has committed another crime, wholly independent and unconnected with the crime for which he is accused, is generally irrelevant and inadmissible, *People v Robinson,* 386 Mich 551, 560; 194 NW2d 709 (1972), *People v Lundberg,* 364 Mich 596; 111 NW2d 809 (1961). By statute, two exceptions are allowed to this rule: first, if defendant takes the stand, thus placing his credibility in issue, MCLA 600.2158; MSA 27A.2158, and second, to show the accused's motive, intent, plan or scheme, MCLA 768.27; MSA 28.1050. Neither exception is applicable to the present case, and this testimony should be excluded.[4]

Reversed and remanded for a new trial in accordance with this opinion.

---

[4] On retrial, the testimony would be inadmissible even if defendant takes the stand. The use of prior offenses to impeach a witness is improper without a showing of convictions thereof, *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), *People v Peabody,* 37 Mich App 87; 194 NW2d 532 (1971).