PEOPLE v STRATTON

1. WITNESSES—CRIMINAL LAW—IDENTIFICATION—IN-COURT IDENTIFICA-
   TION—APPEAL AND ERROR.
   Convictions based on eyewitness identification at trial following
   initial identification by photograph will be set aside on that
   ground only if procedures used were so impermissibly sugges-
   tive as to give rise to a very substantial likelihood of irrepara-
   ble misidentification.

2. CRIMINAL LAW—IDENTIFICATION—EVIDENCE—WITNESSES.
   A victim's subsequent in-court identification will not be deemed
   inadmissible if it had an independent basis even though there
   was an improper photographic identification.

3. WITNESSES—CRIMINAL LAW—EVIDENCE—IDENTIFICATION.
   Sufficient independent basis was presented for an in-court identi-
   fication of a defendant in a robbery trial and any suggestive-
   ness in the photo showup was not fatal where the victim
   testified that she looked directly at the robber at the time of
   the robbery, the victim noticed, at the time, that the robber
   had a scar or scab on his apparently broken nose and the
   record shows that the magistrate conducting the arraignment
   also noticed the same identifying feature on the defendant.

4. WITNESSES—INTIMIDATION—POLICE TAMPERING—TRIAL—PREJUDICE.
   A defendant could not have been prejudiced by alleged police
   tampering with a defense witness where the alleged threats
   were made subsequent to the witness's testimony.

5. WITNESSES—CRIMINAL LAW—PROSECUTORS—CROSS-EXAMINATION—
   ARRESTS.
   Cross-examination by a prosecuting attorney of a defense witness
   concerning his arrest record was not reversible error where

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 21 Am Jur 2d, Criminal Law §§ 334, 341.
[4] 58 Am Jur, Witnesses § 712.
[5, 6] 58 Am Jur, Witnesses § 754 et seq.
[7] 58 Am Jur, Witnesses § 623 et seq.
[8] 58 Am Jur, Witnesses § 152 et seq.

defense counsel had opened the door to such questions on direct examination.

6. WITNESSES—EXAMINATION OF WITNESSES—CROSS-EXAMINATION—
 PRIOR ARRESTS—INQUIRY.

 Inquiry may not be made regarding prior arrests or charges against a witness which did not result in conviction during the examination or cross-examination of the witness; nor may the witness be examined with reference to higher original charges which have not resulted in conviction, whether disposed of by plea or trial.

7. WITNESSES—CROSS-EXAMINATION—COLLATERAL ISSUES—TRIAL—EVI-
 DENCE.

 A cross-examiner is bound by the answers of a witness when the witness is cross-examined on a matter collateral to the issues on trial and the cross-examining counsel cannot introduce extrinsic evidence to contradict the testimony.

8. WITNESSES—ATTORNEY AND CLIENT—ATTORNEY AS WITNESS—
 COURTS—DISCRETION.

 It is within the discretion of the trial court to permit or disallow an attorney to testify on behalf of his client.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted June 20, 1975, at Detroit. (Docket No. 17668.) Decided September 22, 1975.

Kenneth G. Stratton was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Gerard A. Peohlman,* Assistant Prosecuting Attorney, for the people.

*Durant, Talbot, Grant & McQuarrie,* for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. J. KELLY, JJ.

T. M. BURNS, P. J. Defendant was convicted of armed robbery, MCLA 750.529; MSA 28.797, and sentenced to a term of from 7 to 15 years. The robbery occurred at a bar in Lincoln Park, Michigan. The police received an anonymous tip that the defendant was involved in the robbery. The police asked the robbery victim to look through 15 photographs, two of which were pictures of the defendant. The victim picked out the pictures of the defendant as those of the man who committed the robbery.

I

Defendant's first allegation of error is that the photographic identification was improperly suggestive. The robbery victim testified at trial that she had a clear view of the robber while the crime was being committed and that she recognized defendant's photograph as that of the robber at the photographic showup. She also made an in-court identification of the defendant which, she testified, was based on the view she had of the robber at the time of robbery and not on the photograph identification.

Our Supreme Court has recently recognized the principle that:

"[C]onvictions based on eyewitness identification at trial following initial identification by photograph would be set aside on that ground only if procedures used were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[1]

---

[1] *People v Anderson*, 389 Mich 155, 168; 205 NW2d 461 (1973), discussing *Simmons v United States*, 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968).

This Court has repeatedly held that despite an improper photographic identification, the victim's subsequent in-court identification will not be deemed inadmissible if it had an independent basis.[2]

We believe that the facts of the case clearly indicate that there was a basis for the victim's in-court identification of the defendant independent of the photo showup. The victim, Mrs. Bauer, testified that she looked directly at the robber at the time of the holdup. She, at that time, noticed that he had a scar or scab on his apparently broken nose, which the magistrate conducting the arraignment also noticed. We conclude that there was a sufficient independent basis for the in-court identification and that any suggestiveness in the photo showup was not fatal.

II

In his second assignment of error the defendant alleges that the police tried to tamper with a defense witness after he had testified. During the trial, defense counsel stated in an unsworn statement before the court that the witness told him that a police officer visited him in his jail cell and threatened him in an attempt to get the witness to recant his testimony. Defendant claims that he should have been permitted to present evidence of this tampering or that a mistrial be granted.

Upon a careful review of the record, we can find no attempt by defendant to recall the threatened witness to testify regarding the alleged tampering. Therefore, there is nothing on the record to which we can assign error. Furthermore, we agree with

2 *People v Edwards,* 55 Mich App 256, 262; 222 NW2d 203 (1974), *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *People v Maniez,* 34 Mich App 55; 190 NW2d 682 (1971).

the trial court that the defendant could not have been prejudiced by any intimidation of this witness as the alleged threats were made subsequent to his testimony. This is not meant to be a cavalier dismissal of the tampering charge. Police intimidation of a witness is an extremely serious matter which warrants careful investigation. We merely find no error at trial relative to the alleged tampering.

### III

Defendant next contends that the prosecutor committed reversible error by cross-examining a defense witness regarding arrests not resulting in conviction. The prosecutor asserts that this was not error as defense counsel opened the door to such cross-examination by asking the witness on direct examination about his criminal record, reversals of convictions, and pleas to lesser charges. Direct examination of the defense witness went as follows:

"*Q.* Mr. Fiorini, suppose we find out what your convictions are, when they were, what your criminal record is? Will you tell us about it, please?

"*A.* Sure,—I was convicted in 1939 for larceny from a person, and in 1943 for robbery armed.

"*Q.* 1953?

"*A.* '43. And in 1956, well, there was half dozen charges involved there but it wound up larceny or, rather, that was '57. And then 1963, I escaped, and in 1968 I was found guilty of a felonious assault and then I was just convicted in August, which is pending appeal now.

"*Q.* What were you convicted of?

"*A.* Armed robbery, which was almost five years.

"*Q.* Now, of these convictions, were any of them later reversed by a higher court?

"*A.* A couple of them.

"*Q.* Which ones?

"*A.* The armed robbery in Detroit.

"*Q.* That was in 1943?

"*A.* No, that was in 1957.

"*Q.* '57?

"*A.* Yes.

"*Q.* Do you mean the one that you said wound up as larceny?

"*A.* Yes.

"*Q.* That was reversed by a higher court?

"*A.* No, reversed by the trial court.

"*Q.* You mean on a motion for a new trial?

"*A.* The Judge who tried me died and the successor Judge granted a new trial.

"*Q.* And on the new trial, it was the previous verdict was—

"*A.* *(Interrupting):* Well, at the new trial, before I could get a reversal, because of the Judge's death, and whatnot, it took me almost four years to get it and then, rather than go through the trial all over again, I agreed to plead guilty to larceny from a person with the stipulation that I would receive credit for the time I had already served and would get the balance on probation, which is what happened.

"*Q.* I see. Were any others set aside by a higher court?

"*A.* Well, others that were completely reversed, discharged.

"*Q.* Any other convictions, other than these that you have mentioned?

"*A.* No. Isn't that enough?"

The testimony elicited by the defense went far beyond convictions. Defendant argues that the witness's answers which contained information about mere arrests and pleas were nonresponsive and were not meant to be elicited by defense counsel. The fact remains, however, that defense counsel's questions were very broad and if he

wishes to pose such open-ended questions, he must expect such responses. We believe that under these circumstances it was not reversible error for the prosecution to cross-examine the defense witness concerning his arrests, as the defense counsel had opened the door to such questions on direct examination.

The scope of cross-examination for impeachment purposes has received much attention by our Court in recent years. In 1969, this Court held that it is error to cross-examine the defendant in a criminal suit concerning prior arrests not resulting in conviction.[3] Subsequent cases have broadened *Brocato* to include all witnesses[4] and to defendants who subsequently pled to or were convicted of a lesser offense.[5]

Our Supreme Court has recently affirmed *Brocato* and the cases following it by holding that:

"[I]n the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial."[6]

It has been recognized, however, that there is an exception to the rules limiting the scope of cross-examination on arrests. In *People v Bearden,*[7] we held that the prosecutor's asking the defendant about the last time he was arrested was not error

---

[3] *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969).

[4] *People v James,* 36 Mich App 550; 194 NW2d 57 (1971).

[5] *People v Peabody,* 37 Mich App 87; 194 NW2d 532 (1971).

[6] *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973).

[7] 29 Mich App 416; 185 NW2d 438 (1971), *lv den* 384 Mich 832 (1971).

where defense counsel first raised and pursued the line of questioning that led to the defendant's admission of his prior criminal record. Later, in *People v Johnson,*[8] the *Bearden* rule was extended to all witnesses. The following excerpt from the *Johnson* opinion is particularly applicable to the case at bar:

"The initial impermissible reference to the witness' arrest was solicited by defense counsel on direct examination. In *People v Bearden,* * * * this Court denied defendant the benefit of *Brocato* when his prior arrest was elicited by defense counsel on direct examination. This rule is no less applicable to witnesses. Since the jury received knowledge of the defense witness' prior arrest through defense counsel's direct efforts, the onus for any prejudice produced cannot be placed upon the prosecutor. Defendant must accept the burden of his own trial tactics."[9]

Defendant cites *People v Peabody, supra,* as supporting his argument. In *Peabody,* we said that defense counsel did not open the door to the prosecutor's improper questioning by merely asking on direct examination about defendant's prior convictions. *Peabody* does not control this case as here defense counsel inquired into the witness's criminal record, not merely convictions. This line of questioning did open the door for the prosecutor to expand his cross-examination beyond the *Falkner* limitations.

## IV

The next issue concerns the trial court's denial of defense counsel's request to be permitted to

[8] 46 Mich App 212; 207 NW2d 914 (1973).

[9] 46 Mich App at 219; 207 NW2d at 918.

take the stand and testify as to an incident he witnessed concerning two prosecution witnesses. Defense counsel wanted to testify that while in the courtroom hallway he saw one prosecution witness, Mrs. Kuzawinski, make a gesture in the direction of a defense witness, David Proctor, and then another prosecution witness, Mrs. Bunniss, moved her eyes as if to signify assent. These acts were supposed to have pointed out the defense alibi witness as a person present in the bar at the time of the robbery. Defense counsel had previously questioned Mrs. Kuzawinski about the hallway incident on cross-examination, and she denied that she had pointed Proctor out to Mrs. Bunniss. Defense counsel hence desired to give his testimony to impeach Mrs. Kuzawinski.

Defendant's contention that the trial court erred in refusing to allow defense counsel to testify is without merit. When a witness is cross-examined on a matter collateral to the issues on trial, the cross-examiner is bound by the answers of the witness.[10] Mrs. Kuzawinski denied the hallway incident. Defense counsel is bound by the denial and cannot introduce extrinsic evidence to contradict that testimony.

Even had such rebuttal been proper, the trial court would have been correct in not allowing defense counsel to testify, as the impropriety of having defense counsel take the stand outweighed the probative value of his testimony. While there is no absolute prohibition of an attorney testifying on behalf of his client, this practice is not favored and it is within the discretion of the trial court to permit or disallow such testimony.[11]

---

[10] *See* 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 405, p 492, relying on *People v Barrette,* 233 Mich 615; 208 NW 27 (1925).

[11] See *People v Johnson, supra,* at 223.

## V

After a careful review of the record and the briefs of the parties, we conclude that defendant's final two assignments of error concerning jury instructions and impeachment are without merit and do not warrant decisional discussion.

Affirmed.